STATE OF IOWA v. NOAH REASBY, Appellant.

**Criminal Law:** IDENTIFICATION OF DEFENDANT BY STANDING UP. During the trial of a criminal case, the defendant's brother, who 1 .greatly resembled him, took a seat by his side, as a test of identity. At the request of the attorney for the state, the judge ordered the defendant to rise for identification, against the objection of his attorney. The prosecuting witness then identified the one who stood up as the one who committed the offense charged. *H ld,* that the action of the court in compelling the defendant to rise was not error, as compelling him to criminate himself. Neither was it an abuse of discretion to refuse letting defendant make the test attempted by him.

**Evidence:** CONNECTING DEFENDANT. On a trial for robbery, it appeared that the prosecuting witness had gone to a pump near the railroad 2 track, to draw water for his stock; that two colored men had come up and asked if they should not fill the trough. Witness gave permission, and started across the track. When part way across, he looked back, and saw the two men just behind. A moment later, he was struck on the head, knocked insensible, and robbed. He identified the defendant as one of the two men, and three other witnesses, who saw the two colored men talking to witness at the pump, also identified defendant as one of them. *Held,* that the evidence was sufficient to connect defendant with the crime.

INCLUDED OFFENSES: *Charge on.* On a trial for robbery, where there 3 was no evidence tending to show that the offense might have been 4 larceny, it was not error to fail to instruct as to such offense.

**Objection Below:** *Assignment of errors.* An assignment of errors based on the instruction of the trial court, will not be considered 4 unless exception was properly taken below.

*Appeal from Mahaska District Court.*—HON. A. R. DEWEY, Judge.

THURSDAY, DECEMBER 10, 1896.

THE defendant, Noah Reasby, was convicted of the crime of robbery, and from the judgment, which required him to be imprisoned in one of the penitentiaries of this state for the term of fifteen years, he appeals.—*Affirmed.*

*Byron W. Preston* and *J. C. Williams* for appellant.

*Milton Remley,* attorney general, and *Jesse A. Miller* for the state.

ROBINSON, J.—In the evening of the fourth day of July, 1895, Henry Galliers was struck on the head, and made insensible, and several dollars in money were taken from his pocket. The injury was so severe that he did not recover consciousness for two or three weeks. The defendant, Reasby, and one Lud Struther, were jointly indicted for the offense. Reasby was tried separately, and convicted, as stated.

I. During the trial of the defendant, and while Galliers was on the witness stand, but before he was asked who the persons he claimed to have been present at the time of the robbery were, an attorney of the defendant caused a brother of the defendant to sit by him, as a test on the question of identity. An attorney who was assisting at the trial in behalf of the state, whispered something to the presiding judge in regard to the defendant's brother being the defendant, and stated aloud that they had changed places. An attorney for the state then asked the court to require the defendant's brother to retire, or to cause the defendant to rise for identification, and the court thereupon directed the defendant to stand. An attorney for the defendant at once objected, stating that he would stand up for the defendant, but the court ordered the defendant a second time to stand, and he arose. The county attorney then stated, "That is not the man." The defendant sat down, and, Galliers being asked if he could identify the man, "stated that he could, and that the man who stood up was the man." We understand this to mean

that the witness said that the man who arose was one of those who were present when the robbery was committed. The appellant contends that the order of the court was erroneous, because it compelled him to criminate himself. It is certainly proper for the court to require the defendant who is accused of felony, and who is present at his trial, to make himself known. When the objection in question was made, an attorney for the state, in response to it, referred to the defendant and his brother as looking very much alike, and we are justified in concluding from the experiment attempted by the defendant that there may have been such a resemblance. The court appears not to have known who the defendant was, and had the right to cause him to identify himself. The fact that he was accused of the crime was not evidence of guilt, and to require him to stand in the presence of the witness and jury, did not compel him to furnish evidence of his guilt. We are not aware of any rule of law which entitles the defendant, in a criminal case, to remain concealed during his trial, lest his presence might aid in his identification. Yet, the rule contended for by the defendant, carried to its logical conclusion, would lead to that result. It is a very common practice to refer witnesses for the state, in a criminal case, to the defendant, and ask questions concerning him and his alleged offense, and it often happens that a witness is able to testify more particularly, and that the jurors are able to understand more readily, the defendant's connection with the crime charged, by reason of the fact that they see him, and in consequence are better able to apply the evidence to him, and to judge of its value. But where that is done, the defendant does not furnish evidence to criminate himself. This case is unlike one where the accused is compelled, against his will, to submit to a personal examination or to an experiment to determine

some imputed question, and thus furnish evidence which would tend to connect him with the crime of which he is accused. What the rule applicable to such a case is, we have no occasion to determine. The object which the defendant had in view, was really to test the ability of the witness to identify one of his assailants, and it would have been within the power of the trial court to permit the test to be made. But in refusing to allow it, the discretion of the court was not abused.

II. It is urged with great apparent confidence that the evidence is not sufficient to authorize a conviction of the defendant. No witnesses testified to having seen the robbery in question, but the evidence which connects the defendant with it is substantially as follows: Between 7 and 8 o'clock on the evening of the day on which the robbery was committed, Galliers went to a pump, about two hundred yards from the house in which he was living, to water some calves. The pump was twenty-five yards west of a fence on the west side of a railway, and thirty-nine yards west of the center of the track. The calves were to be watered at a gate in a fence ten yards east of the center of the track. Galliers filled his bucket, and, as he was about to leave the pump, two colored men came to him, and asked if they should not fill the trough. He gave them permission to do so, and started with his bucket, in a northeasterly direction, to a gate in the west fence, and then went eastward across the track to the east gate. When he was a few feet east of the track he looked back and saw that the two men were following him, and that they were together in the center of the track. Not suspecting harm, he went on, and about that time received a blow, as stated. It was evidently inflicted by a person who stood behind him, with a club which was found near the spot. When he fell,

he had three or four dollars in silver money in his pocket, and when he was found, a few minutes later, his pocket was turned inside out, and his money was gone. He does not remember anything that occurred after he had passed the railway track four or five yards, although the bucket was standing near the gate, and he was attempting to climb over it when found. He had seen the two men referred to pass along the railroad track frequently, and is positive that the defendant is one of them. Robert Fisher, a boy twelve years of age, a nephew of Galliers, followed him to the pump, and when he reached it Galliers had left it with his bucket of water, but the two men were there. As he passed them, they spoke to him, and he went on for some cattle. When he was some distance away, they called to him that his uncle said that he should get the cattle. He saw the men start after Galliers, but went on without again looking back, and was soon out of sight. He had known the men for about a year, although he had not spoken to them before, and stated that the defendant was one of them. Two young ladies—Mary Watson and Annie Fisher— passed along the track, near the pump, when Galliers was there, and saw two colored men talking with him. Miss Watson states that she had seen the defendant frequently, and knew him, and that he was one of the two men who were talking with Galliers. Miss Fisher had seen the men several times before, and states that the defendant was one of them. After the crime was committed, the defendant and Struther were accused of being guilty of it, and were arrested. After that had been done, the defendant told the constable who arrested him that neither he nor Struther had anything to do with the robbery; that he and one Sam Carter were going up the road together, when Carter told him of a plot to knock Galliers on the head; that they were then near the pump, and Galliers was there; that the

defendant said he would not have anything to do with the matter, and went on up the road; that when he was seventy-five or eighty yards away he looked around, and saw Galliers crossing the road with a bucket of water, and saw Carter hit him twice with a club, and then go through his pockets. The defendant further stated to the constable that Carter said he had a coupling pin hidden, which he intended to use on Galliers, and that he tried to induce the defendant to join him in the venture, but that the defendant refused, and that he did not think at the time that Carter would attempt it. He also told another officer that Carter committed the act, and that he was there on the railroad track when it was done. There were a few other circumstances we have not mentioned, which tend to connect the defendant with the crime. He did not testify, but it is claimed in his behalf that, as the state proved his statements to the constable, it is bound by those which tended to show that he is innocent of wrong. But that is not correct. The statement was made to shield the defendant, and the jury were not required to believe more of it than seemed to be credible. It showed that the defendant knew of the crime, and that he saw it committed. If the witnesses for the state told the truth, he could not have been many yards from Galliers when he was stunned and robbed, but must have been close by, if he did not actually participate in the robbery. He and his companion were close together, and but a few steps behind Galliers, only a few moments before the latter was hit, and it was not possible for the defendant to have been where he claims that he was at the time. The evidence does not show who held the club when it was used on Galliers, but it shows that the act was premeditated, and that the defendant was present when it was committed, and justifies the conclusion that, if he was not the one who

actually used the club, he was close by, to aid and abet the one who did use it. There is testimony which tends to weaken some of the positive statements made by witnesses for the state, but it was the province of the jury to weigh the conflicting statements, and decide the truth of the matters in controversy. We are of the opinion that their verdict has sufficient support in the evidence. .

III.   The sections of the Code under which the defendant was convicted are as follows:

"3858.   If any person with force or violence, or by putting in fear, steal or take from the person of another any property that is the subject of larceny, he is guilty of robbery, and shall be punished according to the aggravation of the offense as is provided in the following two sections."

"3859.  If such offender at the time of such robbery is armed with a dangerous weapon, with intent, if resisted, to kill or maim the person robbed, or if being so armed he wound or strike the person robbed; or if he has any confederate aiding or abetting him in such robbery present and so armed, he shall be punished by imprisonment in the penitentiary for a term not exceeding twenty nor less than ten years."

The crime of robbery, as defined in these sections, includes larceny, and a person indicted for the former might be convicted of the latter offense. *State v. Mikesell*, 70 Iowa, 178 (30 N. W. Rep. 474); *State v. Graff*, 66 Iowa, 482 (24 N. W Rep. 6). Other offenses are also included in robbery. It is the right of a defendant who is being tried for an offense which includes other offenses of lower degrees to have the jury instructed with regard to the included offenses of which there is evidence. *State v. Hathaway*, 100 Iowa, 225 (69 N. W. Rep. 449). But in this case the jury was not so instructed, and of that omission the appellant complains. Among the grounds for a

new trial in a criminal case, are the following: "(5) When the court has misdirected the jury in a material matter of law." "(7) When the court has refused properly to instruct the jury." Code, section 4489. It is the duty of the court to charge the jury in writing. Section 4420 (7). It is also the duty of the court to instruct the jury on the motion of either party. Section 4440. It is the general rule, however, when the court does charge the jury in regard to the issues which it is required to determine, that to enable the defendant to take advantage of an error in the charge he must object to it. See *State v. Hathaway, supra.* We have examined not only the abstracts, but the transcript submitted in this case, without finding anything to show that the defendant excepted to the charge as given. It may be said in support of the charge as given by the court that there was nothing in the evidence to justify the conviction of the defendant of any lower offense than that of robbery. If he was at the place of the robbery at the time it occurred, the presumption is, in the absence of proof to the contrary, that he was there as a participant in the crime, and guilty in law of all that was done. It is not error to omit to charge the jury in regard to an offense of a lower degree which is included in that with which the defendant is charged, but of which there is no evidence. *State v. Sterrett,* 80 Iowa, 612 (45 N. W. Rep. 401); *State v. Perigo,* 80 Iowa, 43 (45 N. W. Rep. 399); *State v. Munchrath,* 78 Iowa, 277 (43 N. W. Rep. 211); *State v. Casford,* 76 Iowa, 332 (41 N. W. Rep. 32); *State v. Row,* 81 Iowa, 147 (46 N. W. Rep. 872). We conclude that the defendant cannot justly complain of the omission to charge the jury in regard to other offenses than that of which he was convicted.

IV. What we have said, disposes of the questions of chief importance in the case. The appellant has

.discussed others, which are not of sufficient import-
ance to be set out in detail. It is sufficient to say,
that the defendant has had a fair trial, and that he has
no legal ground of objection to the judgment of the
district court. It is therefore AFFIRMED.