WILLIAM MAGEE *v.* STATE OF MISSISSIPPI.

[46 South., 529.]

CRIMINAL LAW AND PROCEDURE. *Witnesses. Constitutional law. Constitution* 1890, *sec.* 26. *Privileges of an accused. Evidence against self. Identification. Evidence, demonstrative.*

A defendant was not compelled to give evidence against himself, prohibited by constitution 1890, sec. 26, where he was made, for purposes of identification, to place his foot in a track near where a crime was alleged to have been committed.

FROM the circuit court of Jefferson county.

HON. MOYSE H. WILKINSON, Judge.

Magee, appellant, was indicted for an assault and battery with intent to kill and murder one Lofton, was tried, convicted, sentenced to the penitentiary for ten years, and appealed to the supreme court.

The evidence showed that Lofton, the party assaulted, awakened by some one stealthily moving in his sleeping apartment, arose, and, by the light of a lamp, discovered a negro man in the room. The negro evaded Lofton's effort to seize him, and escaped. As he leaped through a window onto a gallery he fired a pistol at Lofton but missed him. Tracks, made by bare feet, were found upon the gallery and on the ground without the house. The appellant, Magee, a negro, was arrested shortly afterwards, brought by the sheriff to Lofton's premises where the assault had been committed, and compelled while under arrest, by the sheriff, to take off his shoe and put his bare foot into one of the tracks. On appellant's trial in the circuit court, testimony was introduced by the state, over defendant's objection, to show that this compulsory comparison between appellant's foot and the track had been made and that the foot fitted the track exactly in size and shape. In addition, Lofton testi-

fied to the indentity of appellant, as the party who had assaulted and shot at him,    The appellant's defense was an *alibi.*

*Martin & Frierson,* for appellant.

It is a fundamental right, guaranteed by the United States constitution and set forth in the constitutions of the majority of our states, that no person shall be compelled to be a witness against himself in any criminal case.    U. S. Constitution, 5th Amendment; State Constitution of 1890, sec. 26; Code 1906, § 1908.

The case of *Jordan* v. *State,* 32 Miss., 382, is authoritative of our contention here.    In that case, Jordan, a slave, was convicted of the murder of another slave, Aaron by name.    Two persons forced Jordan to talk by threatening to shoot him if he did not do so.    Under the influence of these threats, Jordan told when and where he lost a knife, and described the knife.    The circuit court allowed testimony as to this to go before the jury, upon the district attorney's statement to the court that he expected to show by other testimony that upon search a knife of the description was found near the place designated.    In commenting upon this point, FISHER, J., said: "If there is a principle which may be regarded as settled in the criminal jurisprudence of this country, it is that the accused has the right, under any and all circumstances, to maintain his silence in regard to the commission of the crime charged against him; and the rule which protects him against a full confession of guilt, if it appeared that the confession had been extorted by violence, also protects him against testimony which could only be discovered or made available through the instrumentality of such confession, for otherwise the rule could always be successfully evaded.    That which protects a man against the principal thing must, of course, protect him against its incidents."

In the case of *Blackwell* v. *State,* 44 Am. Rep., 718, the Georgia court said: "On trial for murder, the extent of amputation of one of the defendant's legs being a material question, it was

error to compel the defendant to exhibit his leg to the jury."
See also *State* v. *Jacobs*, 50 N. C., 259.

In *Stokes* v. *State*, 30 Am. Rep., 72, the court stated that, "On
an accusation for murder, it being claimed that certain foot-
prints were those of the defendant, the prosecuting attorney
brought a pan of mud into the court room, and placed it in front
of the jury, and, after proving that the mud in the pan was about
as soft as the mud where the tracks had been discovered, called
on the defendant to put his foot in the mud in the pan. On ob-
jection by counsel for defendant, the court instructed the defend·
ant that compliance was optional with him. The defendant re-
fused, and the court instructed the jury that the defendant's re-
fusal was not to be taken against him. The defendant was con-
victed, and the appellate court held that he was entitled to a new
trial." See also *State* v. *Graham*, 21 Am. Rep., 493; *Hawkins*
v. *State* (Fla.), 10 South., 822; and *Day* v. *State*, 63 Ga., 667.

The rule is well settled that a witness may refuse to answer a
question, the answer to which would tend to incriminate him.
Why should he not have the right to refuse to do a thing which
would tend to incriminate him? If actions speak louder than
words, why rule in favor of the word and not in favor of the act?

To allow evidence of appellant's compulsory act in putting his
foot in the foot-print, to go before the jury is practically allow-
ing the state to profit by the wrongful act of its officers. *Am-
mons* v. *State*, 80 Miss., 992, 32 South., 9; *State* v. *Simmons*,
109 Mo., 118; *Ward* v. *State*, 2 Mo., 120; *Higden* v. *Heard*, 14
Ga., 255; *People* v. *Mather*, 21 Am. Dec., 122; *Counselman* v.
*Hitchcock*, 142 U. S., 547.

*R. V. Fletcher*, attorney-general, for appellee.

Conceding for the sake of discussion, that the appellant's act
in putting his bare foot in the track was under compulsion, the
great weight of authority is in favor of the competency of evi-
dence as to this for assistance in identity. This proposition is
discussed in 3 Wigmore on Evidence, § 2265. Prof. Wigmore,

in this section of his great work, discusses the matter of the court's compelling a person to expose any part of his body or subject himself to measurement, and the learned author utterly repudiates and rejects the doctrine that so doing would be a violation of the constitutional privilege against self incrimination.

I call especial attention to the case, cited by Wigmore, of *State* v. *Graham,* 74 N. C., 648, which is exactly in point, and which held it to be competent to admit evidence of a compulsory placing of accused's foot in a track.

In this day and time, when the Bertillon system of measurement is the usual method of identifying criminals, it is futile to hold that a person charged with crime cannot be forced to submit himself to such measurement for the purpose of a more complete identification. I am, of course, aware that some courts have held to the contrary, but it is believed that their rulings upon the subject are not based upon sound principles nor in accord with any healthy development of the law. Analagous to this in principle, is the common instance of the defendant being forced to disclose the place where stolen goods have been secreted or the body of a murdered person hidden, and this court has held that, while the utterances of a defendant made under compulsion are incompetent, yet witnesses may testify as to what was discovered at the place indicated by the defendant, even though such disclosures were made under compulsion. See the well considered cases of *Garrard* v. *State,* 50 Miss., 151; *Belote* v. *State,* 36 Miss., 96. And this point was clearly before the court in the recently decided case of *Wallace* v. *State* (unreported), a case wherein the judgment was affirmed by the court although a death sentence was involved.

WHITFIELD, C. J., delivered the opinion of the court.

The defendant in this case was compelled to put his foot in a track found near the place where the crime is alleged to have been committed, for the purpose of identifying him, and this is

the sole question having any merit in the cause. This precise question has never yet been adjudicated by this court. Amendment 5 to the Constitution of the United States provides as follows on this point: "Nor shall a defendant be compelled in any criminal case to be a witness against himself." Section 26 of the Constitution of 1890 of Mississippi provides that in any criminal prosecution, "a defendant shall not be compelled to give evidence against himself." The case of *Jordan* v. *State,* 32 Miss., 382, was not a decision on this precise point. That case held that this provision excluded confessions extorted by violence. That is a very different proposition.

Learned counsel for the appellant cite a few cases from Georgia, Tennessee, and North Carolina in support of their view, amongst others the case of *State* v. *Jacobs,* 50 N. C., 259, decided in 1858; but that case was practically overruled in *State* v. *Graham,* 74 N. C., 646, 21 Am. Rep., 493, decided in 1876, wherein the court said: "The object of all evidence is to elicit the truth. Confessions which are not voluntary, but are made either under the fear of punishment if they are not made or in the hope of escaping punishment if they are made, are not received as evidence, because experience shows that they are liable to be influenced by those motives, and cannot be relied on as guides to the truth. But this objection will not apply to evidence of the sort before us. No fears or hopes of the prisoner could produce the resemblance of his track to that found in the cornfield. This resemblance was a fact calculated to aid the jury and fit for their consideration. Evidence of this sort is called by the civilians 'real evidence,' is always admissible, and is of greater or less value according to the circumstances. In Best on Evidence, § 183, the following instances of its value are given: 'In a case of burglary, where the thief gained admittance into the house by opening the window with a penknife, which was broken in the attempt and a part of the blade left sticking in the window frame, a broken knife, the fragment of which corresponded with that in the frame, was found in the pocket of the prisoner. So,

where a man was found killed by a pistol, the wadding in the wound consisted of a part of a printed paper, the corresponding part of which was found in the pocket of the prisoner. In another case of murder, a patch on one knee of the prisoner's breeches corresponded with an impression found on the soil close to the place where the murdered body lay. In a case of robbery, the prosecutor, when attacked, struck the robber on the face with a key; a mark of a key with corresponding wards was visible on the face of the prisoner, etc. Similar instances might be cited indefinitely. The exception, however, is that the officer made the prisoner put his foot in the track in order to test the resemblance. It has been seen that this could not alter the fact of the resemblance, which is the only matter that would have weight as evidence. It has been often held that if a person under duress confesses to having stolen goods and deposited them in a certain place, although his confession of the theft will be rejected, yet evidence that he stated where the goods were will be received, provided the goods were found at the place described. *Reg.* v. *Gould,* 9 C. & P., 364; *Duffy* v. *People,* 26 N. Y., 588; *White* v. *State,* 3 Heisk. (Tenn.), 338; *Selvidge* v. *State,* 30 Tex., 60. The fact of the goods being found in the place described proves that he knew they were there, and this knowledge is a fact bearing on the question of his guilt, to which the jury is entitled. An officer who arrests a prisoner has a right to take any property which he has about him which is connected with the crime charged, or which may be required as evidence. Roscoe's Cr. Ev., 211; *Reg.* v. *O'Donnell,* 7 C. & P. (32 E. C. L. R.), 138; *Reg.* v. *Kinsey, Id.* 447; *Reg.* v. *Burgess, Id.* 488; *Reg.* v. *Rooney, Id.* 515. If an officer who arrests one charged with an offense had no right to make the prisoner show the contents of his pocket how could the broken knife, or the fragment of paper corresponding with the wadding, have been found? If, when a prisoner is arrested for passing counterfeit money, the contents of his pockets are sacred from search, how can it ever appear whether or not he has on his person a large

number of similar bills, which, if proved, is certainly evidence of the *scienter*? If an officer sees a pistol projecting from a pocket of a prisoner arrested for a fresh murder, may he not take out the pistol against the prisoner's consent, to see whether it appears to have been recently discharged? Suppose it to be a question as to the identity of the prisoner, and the person whom a witness says he saw commit a murder appears in court with a veil or mask over his face; may not the court order its removal, so that the witness may say whether or not the prisoner was the person whom he saw commit the crime?"

Mr. Wigmore announces what we prefer as the correct ruling in §§ 2265 and 2266 of the third volume of his work on Evidence, including the notes to both said sections. In §§ 2265 and 2266 he states the principle thus:

"§ 2265. *Bodily Exhibition.*—If an accused person were to refuse to be removed from the jail to the court room for trial, claiming that he was privileged not to expose his features to the witnesses for identification, it is not difficult to conceive the judicial reception which would be given to such a claim. And yet no less a claim is the logical consequence of the argument that has been freqently offered and occasionally sanctioned in applying the privilege to proof of the bodily features of the accused. The limit of the privilege is a plain one. From the general principle (*ante* § 2263) it results that an inspection of the bodily features by the tribunal or by witnesses cannot violate the privilege, because it does not call upon the accused as a witness, *i. e.,* upon his testimonial responsibility. That he may in such cases be required sometimes to exercise muscular action—as when he is required to take off his shoes or roll up his sleeve—is immaterial, unless all bodily action were synonymous with testimonial utterance; for, as already observed (*ante,* § 2263), not compulsion alone is the component idea of the privilege, but testimonial compulsion. What is obtained from the accused by such action is not testimony about his body, but his body itself. Unless some at-

tempt is made to secure a communication, written or oral, upon which reliance is to be placed as involving his consciousness of the facts and the operations of his mind in expressing it, the demand made upon him is not a testimonial one. Both principle and practical good sense forbid any larger interpretation of the privilege in this application; and healthy judicial opinion has frequently pointed this out with force. Of the cases which thus fall within the privilege, those of requiring an utterance of voice for identification, or an inscription of handwriting to be used, or of pointing out places or articles (the act of pointing out being offered as an admission), are perhaps safely within the line of protection. The use of the accused's utterances for forming a witness' opinion as to sanity is a dubitable case only when compulsion has been resorted to. The remaining instances are for the most part clearly without the privilege, although courts vary much in the strictness of their interpretation. It is not always noted that the compulsion, to come within the present principle, must be by process of law, or its eqivalent, for the purpose of obtaining testimony—a distinction to be further examined (*post,* § 2266). The tendency today, almost everywhere, is against the loose extension of the privilege, by way of just reaction against an inclination at one time exhibited to the contrary. That the doubt is entirely one of the present generation shows how alien it is to the orthodox spirit of the privilege. It will one day be incredible that judges could have descended as far as they sometimes have here gone on the road to logical absurdity.

"§ 2266. *Confessions and the Self-Crimination Privilege, Distinguished.*—The rule excluding untrustworthy confessions and the rule giving a privilege against compulsory testimonial self-crimination are sometimes not kept plainly apart, and naturally enough, for not only have they the common feature of an acknowledgment of guilty facts, but also, by the test frequently employed (*ante,* § 826), the test of voluntariness for confessions becomes almost identical with the idea of compulsion as forbidden by the privilege. Judicial expressions which blend the two

into one principle might therefore sometimes be expected. But this confusion is radically erroneous, both in history, principle, and practice. That the history of the two principles is wide apart, differing by one hundred years in origin, and derived through separate lines of precedents, appears sufficiently from a survey of the two histories as already set forth (*ante,* §§ 818, 2250). If the privilege fully established by 1680 had sufficed for both classes of cases, there would have been no need in 1780 for creating the distinct rule about confessions. So far as concerns principle the two doctrines have not the same boundaries; *i. e.* the privilege covers only statements made in court under process as a witness and the confession rule covers statements made out of court, but may also, overlapping, cover statements made in court. Finally, in regard to practical effects, the conceded differences become material: (a) The confession rule is broader, because it may exclude statements which are obtained without compulsion. (b) Where the privilege is waived or not claimed, the confession rule may still operate to exclude. (c) Where the privilege is nullified by statute (as it may be in England, and has been by the English bankruptcy act), the confession rule may still operate. (d) Where the testimony, though given under oath, does not violate the confession rule, it may still involve a violation of the privilege. (e) The privilege applies to witnesses as such, in civil and in criminal cases; but the confession rule is concerned only with party defendants in criminal cases. (f) A party defendant is protected by the confession rule against the use of his own statements only; but the privilege is applicable also to witnesses during his trial, and it is by some maintained that he may object to the use against him of testimony extracted by a violation of the witness' privilege. No doubt other situations may be conceived in which the two principles operate with entire independence. Nothing but subversion of principle and confusion of practical rules can result from an attempt to predicate an analogy and relationship. The sole relationship is found in the general spirit of protection

and caution which our legal system shows towards an accused. But this spirit is equally responsible for the rule about reasonable doubt, the rule about *corpus delicti,* the rule about lists of witnesses, and several others peculiar to criminal cases; and there is no more reason for linking the privilege with the one than with the others. There is, indeed, less reason, since the privilege is intended as well for witnesses as for parties defendant."

In the case of *U. S.* v. *Cross,* 20 D. C., at page 382, in which the court admitted measurements of the defendant made in the marshal's office, the court, amongst other things, said: "It could not be contended that the knowledge of the size or height of a man acquired in any other way—for instance, by a tailor—could not be used when at the time it was taken for the purpose of being used as testimony; and it seems to us that a record taken as this was, for a lawful purpose and under the rules of the office, might be made use of afterwards. It does not seem to us that it is compelling the defendant to give evidence against himself, although some cases that have been cited to us go very far in that direction. It was held in another case that where the officer compelled the defendant to put his foot in certain tracks that were discovered, in order to identify him, that was wrong, as it was compelling him to give evidence against himself, and evidence of that kind, so secured, could not be used. We think that is going very far. It is rather too fine. What would be the consequence if such evidence should be entirely excluded ? You could not compel a person after his arrest to empty his pockets and disclose a weapon, when the most vital evidence on the part of the government, in a homicide case, is the possession of the deadly weapon. Could you not compel him to open his pocketbook and exhibit papers that might be conclusive in the case of forgery, or anything of that sort ? We think that officers having a prisoner in custody have a right to acquire information about him, even by force, and that, for example, when his photograph is taken, or his measurement taken, it is simply the act of the

officers, and is not compelling him to give evidence against himself." This case cited was decided in 1892.

In note 3 to § 2265, to be found on pages 3130 and 3131 of Wigmore on Evidence (third volume), is to be found a very complete list of the authorities *pro* and *con* on this subject. We refer to just a few of them. In California, in 1888, in *People* v. *Goldenson,* 76 Cal., 347, 19 Pac., 161, it was held proper to compel a defendant to stand up before the jury for identification. And a defendant was held properly compellable to stand up for identification as to size in *People* v. *Oliveria,* 127 Cal., 376, 59 Pac., 772. To the same effect is *State* v. *Reasby,* 100 Iowa, 231, 69 N. W. 451, and *State* v. *Prudhomme,* decided in 1873, 25 La. Ann., 522. In *State* v. *Tettaton,* decided in 1900, 159 Mo., 354, 60 S. W., 743, testimony of physicians to the condition of a wound on defendant's head, shaved by compulsion, was held admissible. In *People* v. *Gardner,* 144 N. Y., 119, 38 N. E., 1003, 28 L. R. A., 699, 43 Am. St. Rep., 741, decided in 1894, defendant was held compellable to stand up in court for identification. The same principle is announced in *People* v. *Van Wormer,* 175 N. Y., 188, 67 N. E., 299, decided in 1903, where it was held that taking the defendants' shoes from them and placing the shoes in foot-marks, was proper. See, also, *Lipes* v. *State,* 15 Lea (Tenn.), 125, 54 Am. Rep., 402, decided in 1885. The same principle is announced in *Benson* v. *State* (Tex. Cr. App.), 69 S. W., 165, decided in 1902. And the same principle is again announced in *Thornton* v. *State,* 117 Wis., 338, 93 N. W., 1107, 98 Am. St. Rep., 924, decided in 1903. The distinction between the rule excluding confessions obtained by force and the exclusion of mere bodily exhibitions of the defendant, under compulsion, for the purpose of identification, is very clearly pointed out by Wigmore in the section above quoted—§ 2266 of volume 3 of his work. Whatever may have been the holding in some earlier cases, we are thoroughly satisfied that the true view is that set out in volume 3, § 2265 of Wigmore on Evidence.

There has been great confusion in some courts on this subject; but we do not see how it is possible, logically, to sustain an objection to compelling the defendant simply to put his foot in a track for the purpose of identification on the ground that he was privileged by the constitutional provisions referred to against being compelled to testify or to give evidence against himself. He is not, in such cases, giving evidence. He is not testifying as a witness. He is not delivering any testimonial utterance. The case of *Hawkins* v. *State,* 29 Fla., 554, 10 South., at page 822, is not at all in point. The supreme court of Florida construed a statute of that state (§ 29, p. 519, McClel. Dig.), permitting the party accused to make a statement under oath, as not subjecting the party to the position and responsibility of a witness. We have held the contrary here under our statute permitting a defendant to testify in his own behalf. Besides, the principal proposition there, permitting the defendant, at the request of a juror, to write the set of figures that constituted the gist of the alleged forgery, and then permitting these figures to be used by the jury in comparison with the forged instrument, is a somewhat different proposition anyway.

The judgment is *affirmed.*