# England *v.* The State.

*Indictment for Burglary.*

1. *Evidence identifying defendant, or connecting him with offense charged.*—In a criminal case, evidence tending to connect the defendant with the commission of the offense charged, or identifying him as the perpetrator, is relevant and admissible; as, under a prosecution for burglary, some of the goods stolen from the house having been found in the defendant's valise when he was arrested, and others in an old uninhabited house more than a half-mile distant from his house, it is competent for the prosecution to prove that two pairs of old shoes were also found in the house, of the size worn by the defendant.

2. *Impeaching witness on cross-examination.*—Defendant's brother, having testified as a witness for him, may be asked on cross-examination if he had not, at a time and place named, said to an accomplice who had turned State's evidence, "Why did you give us away? if you had not, we would have been out of jail now, and could have got as many witnesses as we wanted to prove you and Jim out;" and having denied that he made such statements, they may be proved by a person present.

FROM the Circuit Court of Shelby.

Tried before the Hon. LEROY F. BOX.

The indictment in this case charged that the defendant, James England, with the intent to steal, broke into and entered a store-house of John Weldon, in which shoes, and other goods and articles of merchandise, things of value, were kept for use, sale, or deposit. Issue being joined on the plea of not guilty, the defendant was convicted, and sentenced to the penitentiary for the term of four years. On the trial, as the bill of exceptions shows, the prosecution proved that Weldon's store-house was broken and entered on the night of 30th December, 1889, and a quantity of goods stolen from it, among which were several pairs of shoes, several cards of collar-buttons, and other articles described; that about the 1st February, 1890, while the deputy-sheriff

[England v. The State.]

was hunting for the defendant and one Cub Brombaugh, who were suspected of being implicated in the burglary, he found two valises "at Laney's in said county," and took possession of them; that on the defendant's arrest, about a week afterwards, he claimed the smaller valise as his, and the sheriff gave him a shirt from it. The valise, being identified and opened, was found to contain some collar-buttons and other things, which Weldon identified as part of the stolen goods; "but it had no shoes in it." The prosecution proved, also, that a rain fell during the night of the burglary, December 30th; that the tracks of two men were found next morning, in the public road, leading from the house of defendant's father, where defendant resided, towards Weldon's store, and returning along the public road towards said house. John Day, a witness for the prosecution, testified that there was an old uninhabited house, called the "Weaver house," more than a half-mile distant from the house of defendant's father, and two or three miles distant from Weldon's store, but not on the road between them; and that he there found some "collar-button cards and two pairs of old shoes, about Nos. 9." He identified the collar-buttons exhibited to him, and they were also identified by Weldon; but he did not state, so far as the record shows, when, or about what time, he found these articles in said house. The defendant objected to the testimony of this witness, as to what he found in the house, "because it was not shown that he was ever seen at or near said house;" and he excepted to the admission of the evidence as to the shoes. The bill of exceptions adds in this connection: "Defendant and Brombaugh wore No. 9 shoes."

The defendant himself testified that he slept all night of the 30th December, 1889, at the house of W. H. Salser, who was connected with him by marriage; and he introduced several members of the family as witnesses, whose testimony was, in substance, that he could not have left the house without awakening some of them, as there was but one room in the house, in which were two beds, and that the door could not be opened without noise and difficulty. John England, a brother of the defendant, testified in his behalf to facts tending to show that Brombaugh was the burglar, and that the stolen goods found in defendant's valise were obtained from him. On cross-examination of said witness, the solicitor asked him, if he did not say to Brombaugh, "while in jail about the time of the preliminary trial," "Why did you give us away? If you had not turned State's evidence, *me* and

pa would have been out of jail now, and could have got as many G— d— witnesses as we wanted to have proved you and Jim out." The defendant objected and excepted to this question, but answered it in the negative. The prosecution afterwards introduced one Slaughter as a witness, who testified to a conversation in which he heard defendant say to Brombaugh in substance what is above stated; and the court admitted this evidence, against the objection and exception of the defendant.

WM. L. MARTIN, Attorney-General, for the State.

SOMERVILLE, J.—But two questions are raised in this case, both being on objections to the admission of evidence introduced by the State. In neither of these rulings of the trial court do we discover any error.

1. The witness Day was permitted, against defendant's objection, to testify to the fact, that he had seen two pairs of men's shoes, being "number nines," in an old uninhabited house, situated from one half to three quarters of a mile from where defendant resided. It had rained the night before, and the tracks of the two men had been seen in the public road going to and coming from the storehouse in which the burglary had been committed. There was evidence tending to identify some of the goods found in this old house, as having come from the burglarized store-house. A valise, found in the defendant's possession, contained goods of like kind. The defendant was shown to wear a number nine shoe. Taken in connection with the other facts of the case, the evidence objected to was relevant, as tending to connect the defendant with the commission of the alleged burglary.

2. The question asked the witness John England, on cross-examination, elicited a fact which tended to show his great bias, or partiality, in favor of the defendant, and even his willingness to commit perjury to secure his acquittal. It went to the question of his veracity, therefore, and was admissible to impeach it.—*Hussey v. The State*, 87 Ala. 121, 134; *Haralson v. The State*, 82 Ala. 47, and cases cited.

The judgment is affirmed.