#### STATE v. PRESCOTT

(117 S. E., 637)

CRIMINAL LAW—EVIDENCE NOT INADMISSIBLE THOUGH UNLAWFULLY SEIZED OR OBTAINED.—Though evidence may have been illegally taken from possession of the party against whom it is offered or otherwise unlawfully obtained, such fact does not render it inadmissible.

Before TOWNSEND, J., Richland, May, 1922. Affirmed.

George Prescott and others were convicted of violation of the prohibition law and appeal.

*Messrs. C. N. Sapp* and *C. T. Graydon,* for appellants, cite: *Warrant illegal as affidavit does not state sources of information and ground of belief:* Crim. Code, 1912, Sec. 836; 9 S. C., 309; 40 S. C., 509; 51 S. C., 54; 61 S. C., 242;

112 S. C., 342; 180 U. S., 371; 3 Cranch, 448; Const., 1895, Sec. 16, Art., 1. *Illegal search:* Crim. Code 1912, Sec. 830; 104 S. C., 147; 105 S. E., 283; 103 S. E., 501; 116 S. C., 816; 232 U. S., 383; 251 U. S., 385; 255 U. S., 298; 279 Fed., 706; 277 Fed., 939; 275 Fed., 142. *Warrant served by constable who swore same out:* Crim. Code, 1912, Secs. 44, 45.

*Mr. A. F. Spigner, Solicitor,* for the State.

May 26, 1923.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The record shows:

"This case was commenced by the finding of an indictment against George Prescott and Dave Murphy and Emma Meetze for violation of the prohibition law, and was tried in Richland County on May 24, 1922, and resulted in a verdict of guilty as to the defendant Prescott and the defendant Murphy. After the jury was impaneled and sworn, and before the taking of any testimony in the case, the solicitor in open Court nol. prossed the case against Emma Meetze."

### EVIDENCE.

"The evidence in the case consisted of the testimony of Emma Meetze, who swore that Prescott, the defendant, had rented a room in her house and had therein stored the whiskey in question. She testified that the room was rented by Murphy but for Prescott, and that when the officers came in Prescott was drawing the whiskey out of a keg and stopping it up in quart jars. That the house in which the whiskey was stored was her house, and was a dwelling house in which she lived."

"The defendant Prescott said he wanted the room to store some things in. I rented to him and gave him the key. I did not see him store the whiskey in the room, because I was not at home. I did not know that there was any whiskey there, until the officers raided the house."

"The witness T. A. Berley, a witness for the State, testi-
fied that he was an officer of the law and went to the home of
Emma Meetze, a dwelling house, between 12 and 1 o'clock
at night, on April 22, 1922, and made therein a search under
a warrant."

The testimony was objected to on three grounds, to wit:
The search warrant was insufficient, the house searched
was a dwelling house, and the search was in the night, all in
violation of the law .

The recent case of *State v. Green* 121 S. C., 230, 114 S.
E., 317, shows that the point cannot be sustained. That
case holds:

"It may be mentioned in this place that, though papers and
other subjects of evidence may have been illegally taken from
the possession of the party against whom they are offered,
or otherwise unlawfully obtained, this is no valid objection
to their admissibility, if they are pertinent to the issue. The
Court will not take notice how they were obtained, whether
lawfully or unlawfully, nor will it form an issue to determine
that question."

That is the law of this State and a republication of state-
ments of that case would be unprofitable.

Affirmed.

MR. CHIEF JUSTICE GARY concurs.

MR. JUSTICE MARION, I concur under the authority of
*State v. Green,* which I think was correctly decided. Unlaw-
ful seizures and searches by officers of the law are not to be
approved or encouraged by the Courts; but the remedy for
official misconduct in that regard does not lie in saying that
what is in fact *evidence* is *not evidence,* but in the pursuit by
the injured party of such remedies as are not provided by
law or as should be provided by the lawmaking power.

MESSRS. SEASE, FEATHERSTONE, RICE, BOWMAN, HENRY,
DENNIS and JOHNSON, Circuit Judges, concur in opinion of
MR. JUSTICE FRASER.

MR. JUSTICE WATTS (dissenting): The defendant was
convicted and sentenced for violation of the prohibition law

at Richland County, on May 24, 1922, and by six exceptions alleges error.

The first question complains that the warrant was illegal on its face, having failed to state the sources of information and the grounds of belief. Section 836, Criminal Code 1912: Affidavits may be on information and belief: whenever in this chapter it is provided that process shall issue upon an affidavit based on information and belief, the affidavit shall contain a statement setting forth the sources of information, the facts and grounds of belief. Provided that it shall not be necessary to set forth the sources of information, the facts and grounds of belief in the affidavit upon which a warrant of arrest shall issue, but it shall be only necessary in cases of search warrant.

The exceptions raising this question should be sustained as the warrant is fatally defective, and, further, the officers had no right to search a dwelling house in the nighttime. Section 830, Criminal Code 1912, says, "provided that no dwelling house shall be searched in the nighttime."

The warrant was served by a constable who swore out the warrant and expressly violated Sections 44 and 45 of the Criminal Code of 1912.

All laws ought to be enforced, but in enforcing the same the officers charged with the enforcement ought to be careful not to violate the laws of the land, and be themselves guilty of an infraction of the law while attempting to enforce the law.

The prohibition law should be enforced the same as any other law, but the officers charged with the enforcement have no rights higher than the enforcement of other laws. The same rules of enforcement must govern them.

We are aware that in the enforcement of the prohibition law they meet with many obstacles and difficulties, yet they should be governed by the same rules of enforcement. It is a fact that will not be seriously questioned that in Richland County, under the dispensary law, one dispensary prob-

ably sold more liquor in one month than all of the blind tigers in Richland County sold in twelve months. The law can be enforced and illegal sales of liquors suppressed under the same rules or regulations, and the same laws as employed in the suppression of all other violations of law, and it will not do to allow officers, in their zeal to enforce law, to violate, however innocently, the wise statutes that protect the citizens.

There was no evidence in this case to convict the appellant, except as to that which was illegally obtained, and under the cases of *Blacksburg v. Beam,* 104 S. C., 147; 88 S. E., 441; L. R. A., 1916E, 714. *State v. Zaglin,* 114 S. C., 265; 103 S. E., 510. *State v. Wagstaff,* 115 S. C., 198; 105 S. E., 283, I think the exceptions should be sustained and judgment reversed.

MESSRS. MEMMINGER and WILSON, Circuit Judges, concur.

MR. JUSTICE COTHRAN (dissenting) : I concur in the dissenting opinion of Mr. Justice Watts and wish to add a few observations of my own in support of his conclusion.

I think that the constitutional guaranty of immunity from unreasonable searches and seizures conferred by Article 1 § 16, of our Constitution—"the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated"— extends not only to the *fact* of search and seizure, but to every *incident* of such unlawful act. To hold that the citizen shall enjoy such immunity, and yet when it is flagrantly violated, his person shall be subjected to punishment and his property confiscated, upon the strength of evidence thus unlawfully obtained, is but to "keep the promise to the ear and break it to the hope."

It seems to me that the very words of the Constitution render it impossible to offer in evidence "papers or effects" thus unlawfully obtained. Can it be said that his "person" was rendered secure from such search while the evidence

thus obtained is used to place that "person" behind the bars or made to crack rock on the public highways? Can it be said that his "papers or effects" were rendered secure when they are abstracted from his possession and used as evidence against him?

It is contended that whatever may be evidence is evidence however obtained, and that the defendant's remedy is an action for damages against the trespasser or a criminal prosecution against him whenever the Legislature sees fit to make such trespass a crime. I do not think that this meets the question of the defendant's rights under the Constitution. They are that his person, house, papers, and effects shall be secure from unreasonable search; that security should extend to every incident of such search; otherwise the immunity is but a mockery.

The State is the Fountain of Law and Justice. It is the last one to condone or seek to obtain an advantage by the infraction of the law. It is beneath the dignity of the State to juggle with the constitutional rights of a citizen and by refined reasoning to employ tainted evidence to convict him. As the Supreme Court of the United States has said in the Silverthorn Case, 251 U. S., 385; 40 Sup. Ct., 182; 64 L. Ed., 319:

"If knowledge of them is gained from an independent source, they may be proved like any others; *but the knowledge gained by the government's own wrong cannot be used by it in the way proposed.*"

The State cannot afford to be the receiver of stolen goods.

I think it is against public policy to admit such evidence. Once lay down the law that, however unlawful the search may have been, the fruits of that search are admissible evidence, those engaged in the enforcement of a particular law, who themselves should be the strongest advocates of respect for the law, will trample it under their feet in eagerness to reach their quarry; houses will be entered at night, citizens will be held up on the street, automobiles carrying women

will be shot into on the highways, in defiance of the law and with supreme indifference for their personal accountability. If such a holding induces such conduct, the law should remove the inducing cause.

It is bound to lead to bloodshed. If the officers persist in an admittedly unlawful procedure, they may expect justifiable resistance, and it is a question which side of the controversy will suffer most. It seems a pity to me that the Courts should offer any encouragement whatever to a course which must eventuate in trouble.

I can see no reason why there should be a departure from the well-established principles of the law, in aid of the enforcement of any particular law. If there is to be a departure in aid of efforts to enforce the prohibition law, which appears to monopolize a major portion of the time of officers, state and federal, why not extend the departure to all crimes, *malum in se,* and otherwise? And why not, which would appear more justifiable, go the entire length of abrogating the Constitution and give officers the right to search and seize without warrants?

The difficulties of enforcing the prohibition law are appreciated, and there is no doubt that the right to search without a warrant or to use evidence thus obtained would greatly add to the efficiency of the crusade; at the same time, this Court, through Mr. Justice Gage, than whom no South Carolina Judge ever had a greater sympathy for the enforcement of this praticular law, remarked in the *Beam Case,* 104 S. C., 146; 88 S. E., 441; L. R..A., 1916E, 714:

"Some things are to be more deplored than the unlawful transportation of whiskey; one is the loss of liberty. Common as the event may be, it is a serious thing to arrest a citizen, and it is a more serious thing to search his person, and he who accomplishes it must do so in conformity to the laws of the land. There are two reasons for this—one to avoid bloodshed, and the other to preserve the liberty of the citizen.

Obedience to law is the bond of society, and the officers set to enforce the law are not exempt from its mandates.

"In the instant case the possession of the liquor was the body of the offense; that fact was proven by a forcible and unlawful search of the defendant's person to secure the veritable key to the offense.   It is fundamental that a citizen may not be arrested and have his person searched by force and without process in order to secure testimony against him. * * *  It is better that the guilty shall escape, rather than another offense shall be committed in the proof of guilt."

I do not see how it is possible to differentiate the case at bar from recent decisions by the Supreme Court of the United States construing the Fourth Amendment to the United States Constitution, which is identical in terms with Article 1, § 16, of our Constitution.   It is true that those decisions are not controlling upon this Court, as it has been held that the security offered by the Fourth Amendment applies solely to action under Federal authority or by Federal Officers.   *Burdeau v. McDowell,* 256 U. S., 465, 41 Sup. Ct., 574; 65 L. Ed., 1048; 13 A. L. R., 1159.   Yet it goes without saying that they are entitled to the greatest respect, and conformity to them conduces to uniform interpretation of the law in a matter in which the State and Federal authorities have concurrent jurisdiction.

In *Amos v. U. S.,* 255 U. S., 313; 41 Sup. Ct., 266; 65 L. Ed., 654, a search of the defendant's house was made in the daytime by Federal Officers; they had neither arrest warrant nor search warrant; bottles of whiskey were found in the defendant's house.   Upon the trial these evidences of the charge were offered and admitted over the defendant's objection.   Upon appeal the Court held that the search was plainly in violation of the Fourth Amendment and that the evidence should not have been received.

In *Gouled v. U. S.,* 255 U. S., 298; 41 Sup. Ct., 261; 65 L Ed., 647, an officer of the government clandestinely, without search warrant, gained entrance to the defendant's of-

fice and abstracted certain papers of an evidentiary character which were offered in evidence upon the trial. The Court held that the papers were inadmissible under both the Fourth and Fifth Amendments.

In *Honeycutt v. U. S.* (*C. C. A.*), 277 Fed., 939, the Government was allowed to introduce in evidence certain goods alleged to have been received by the defendant knowing that they were stolen. The goods had been taken from the defendant's possession by a Government Officer under a void search warrant. The Court held that as the goods had been illegally seized they were inadmissible as evidence against the defendant.

In *Woods v. U. S.* (*C. C. A.*), 279 Fed., 706, it is held that evidence procured under a void search warrant cannot be admitted.

In *U. S. v. Falloco* (*D. C.*), 277 Fed., 75, it was held that although State Officers made the unlawful search, the evidence obtained was inadmissible if the Federal Officers cooperated with them. To the same effect is *U. S. v. Case* (*D. C.*), 286 Fed., 627.

In *Salata v. U. S.* (*C. C. A.*), 286 Fed., 125, it was held that evidence obtained under an admittedly invalid search warrant should not be received.

In *Murphy v. U. S.* (*C. C. A.*), 285 Fed., 801, it was held that in the absence of any invitation or consent, defendant's house and store could not be lawfully searched or his property seized without a search and seizure warrant, and evidence so obtained could not be used against him. The Court says:

"Volati's contention that the money taken from the till in his store (four of the $1 bills originally in the stolen mail pouch) without a warrant could not be used as evidence against him is so well taken that discussion is unnecessary."

In *Snyder v. U. S.* (*C. C. A.*), 285 Fed., 1, it was held in a case of search and seizure in the enforcement of the pro-

hibition law, that evidence obtained from the defendant by an unlawful search was inadmissible against him.

In *Giles v. U. S. (C. C. A.)*, 284 Fed., 208, it was held that liquor seized after search of a store under an illegal search warrant was inadmissible.

This rule is followed in Kentucky: *Smith v. Com.*, 197 Ky., 192; 246 S. W., 449. *Fairchild v. Com.*, 197 Ky., 308; 246 S. W., 786. *Hale v. Com.*, 197 Ky., 214; 246 S. W., 787. *Shell v. Com.*, 197 Ky., 264; 246 S. W., 797. *Foley v. Com.*, 197 Ky., 226; 246 S. W., 800. *Taylor v. Com.*, 197 Ky., 289; 246 S. W., 814.

In Michigan: *People v. Effelberg*, 220 Mich., 528; 190 N. W., 727, *People v. Knopka*, 220 Mich., 540; 190 N. W., 731. *People v. Case*, 220 Mich., 379; 190 N. W., 289. *People v. Margolis*, 220 Mich., 431; 190 N. W., 306.

In Mississippi: *Taylor v. State*, 129 Miss., 815; 93 South., 355. *Butler v. State*, 129 Miss., 778; 93 South., 3.

In West Virginia: *State v. Wills*, 114 S. E., 261. *State v. Andrews*, 114 S. E., 257.

Many other States take the same view, but it must be admitted that a majority are opposed to it.

The vice in the argument sustaining the admissibility of the evidence is in the assumption thus expressed in *People v. Mayen* (Cal. Sup), 205 Pac., 435:

"The trespass committed in the wrongful seizure of these personal effects by unauthorized officers, and the subsequent use of the same in evidence on the part of the prosecution, *were in legal effect entirely distinct transactions with no necessary or inherent relation to each other.*"

That is an assumption pure and simple, and takes for granted the turning point in the question. In my opinion they are intimately connected; the purpose of the search being to obtain the evidence, and this to be followed by its introduction.

I concede that my conclusion is not in accord with the later decisions of this Court, but it is in accord with the

earlier decisions which have been allowed to stand. In this situation I think it is the wiser course to fall in line with the federal decisions and to secure harmony in the interpretation of a vexed and constantly recurring question. It does not add any great respect for the administration of the law to have divergent views of the same question in Courts of concurrent jurisdiction in the same territory.

MESSRS. MEMMINGER, WILSON and DEVORE, Circuit Judges, concur.