## 11573

### STATE v. GRIFFIN

#### (124 S. E., 81)

1. CRIMINAL LAW—IN CASE INVOLVING DEPRIVATION OF DEFENDANT'S LIBERTY, SUPREME COURT WILL NOTICE SUBSTANTIAL ERROR WITHOUT OBJECTION.—In a felony case involving deprivation of defendant's liberty, Supreme Court will take notice, on defendant's behalf, of error in admission of evidence apparent on record, by which defendant has been deprived of a substantial means of enjoying a fair and impartial trial, though no objection was made; Solicitor making no point of failure to object.

2. CRIMINAL LAW—SHERIFF'S TESTIMONY AS TO COMPARISON OF SHOE WITH TRACK NOT VIOLATIVE OF DEFENDANT'S IMMUNITY FROM TESTIMONIAL COMPULSION.—Sheriff's testimony that he compared defendant's shoe with certain tracks, and that it fitted, *held* not violative of defendant's constitutional privilege of immunity from testimonial compulsion, under Const., Art. 1, § 17, though Sheriff forced defendant to remove her shoe, and made adjustment himself.

3. CRIMINAL LAW—EVIDENCE OBTAINED FROM PRISONER AFTER ARREST
   HELD LAWFULLY OBTAINED.—An officer having a prisoner under
   arrest suspected of a crime should search him for weapons and
   means of escape or evidence connecting him with the crime, and
   evidence secured under such circumstances is lawfully obtained.

4. CRIMINAL LAW—EVIDENCE UNLAWFULLY OBTAINED, ADMISSIBLE.—
   Even if evidence was unlawfully obtained, article secured on search
   of prisoner's person is admissible.

5. CRIMINAL LAW—DEFENDANT CANNOT BE COMPELLED TO TESTIFY
   AGAINST HIMSELF UNDER ANY CIRCUMSTANCES.—Under Const., Art.
   1, § 17, defendant in a criminal case cannot be compelled to testify
   against himself under any circumstances; the line of cleavage be-
   ing whether proposed evidence is defendant's testimony, or evidence
   in itself, unaided by any statement of defendant.

6. CRIMINAL LAW—SHERIFF'S TESTIMONY AS TO DEFENDANT'S REFUSAL
   TO PUT HER FOOT IN TRACK CORRECTLY HELD INADMISSIBLE.—Sheriff's
   testimony that he compelled defendant to put her foot in a certain
   track, and that she would not do it in the right way, *held* inadmis-
   sible.

Before MR. JUSTICE ANSEL, County Court, Greenville,
April, 1923. Reversed and remanded.

Lilly Bell Griffin was convicted of an attempt to admin-
ister poison and she appeals.

*Messrs. H. P. Burbage* and *Dean, Cothran & Wyche,* for
appellant.

*Messrs. Daykns K. Stover, Solicitor,* and *Bonham,
Price & Poag,* for the State, cite: *Solicitor not required to
elect which count of the indictment defendant should be
tried under:* 80 S. C., 387. *Fitting defendant's foot to
tracks at scene of the crime not error:* 94 S. C., 439.
*Reasonable doubt properly defined:* 33 S. C., 117; 115 S.
C., 402.

August 13, 1924.

The opinion of the Court was delivered by MR. JUSTICE
COTHRAN.

Appeal from conviction and sentence under an indict-
ment charging a violation of Section 149, Criminal Code

of 1912 (Section 11, Criminal Code of 1922), making it a felony to attempt to administer poison to another. The alleged offense consisted in sprinkling paris green, a poison, upon the leaves of turnips growing in the garden of the prosecutor.

The principal circumstances, relied upon by the State to connect the defendant with the offense, were the unpleasant relations which existed between the parties, who were near neighbors; the attempt to obliterate the tracks, when she was required by the sheriff to put her shoe in a track; the conformity of her shoe with a track, when it was placed therein by the Sheriff, after he had forced her to remove it; and a line of tracks leading from the turnip patch, across a potato patch, and onto the back porch of the defendant's house. The Sheriff testified that he made a search of the plaintiff's house and found no evidence of paris green; that he asked the defendant to go with him to the potato patch where the tracks were; that she complied; that some of the tracks had been disturbed; that he asked her to put her foot in the tracks; that she pretended to do so, but would not put her foot in the track in the right way (or, as another State witness testified, "Defendant would not put her foot in the track, as requested by the Sheriff") ; that he made her sit down on the grass, and take off her shoe; that it fitted the track, presumably being adjusted by the Sheriff.

The exceptions raise the following questions, which alone we deem it necessary to consider: (1) Was the testimony of the Sheriff admissible, to the effect that he compared the shoe of the defendant with the tracks in the potato patch, and that it fitted, when it appeared that he had forced the defendant to remove her shoe, and made the adjustment himself? (2) Was the testimony of the Sheriff admissible, to the effect that he compelled the defendant to put her foot in the track, and that she would not do it in the right way?

It is forced upon our attention, upon reading the record for appeal, that the defendant's attorney made no objection to the testimony of the Sheriff, as to

either fact mentioned above. A strict enforcement of the rule would preclude the defendant from now raising either question; but as no point of this has been made by the solicitor, who has argued the question upon the merits, we will as a matter of grace, follow the rule declared in *State v. McNinch,* 12 S. C., 89:

"This Court is bound, in a capital case [and we think equally so in a case of felony involving the deprivation of the defendant's liberty], to take notice, in behalf of the accused, of any error apparent upon the record by which the prisoner has been deprived of any of the substantial means of enjoying a fair and impartial trial."

As to the first question: Touching the admissibility 2-4 of testimony of the Sheriff as to his comparison of the shoe with the track. The evidence was admissible upon any one of the following grounds:

(a) Its admission was not a violation of the defendant's constitutional privilege of immunity from testimonial compulsion.

(b) An officer having a prisoner under arrest suspected of a crime, has the right, and it is his duty, to search him for weapons, means of escape, or evidence connecting him with the crime which has been committed; the evidence under such circumstances is lawfully obtained.

(c) Even if unlawfully obtained, the article secured is admissible in evidence, as evidence in and of itself.

The objection to its admissibility, is that it contravenes the clause in the Constitution (Article 1, § 17) which provides:

"Nor shall any person * * * be compelled in any criminal case to be a witness against himself."

It is remarkable that a constitutional provision, so vital to the personal liberty of a citizen, should, by a literal construction, be susceptible of the interpretation, that the privilege arises only in a prosecution for a criminal offense against the defendant himself, upon the occasion of his be-

ing compelled to take the stand as a witness. It has been so held in a number of cases, cited in 40 Cyc., 2539. But taken in connection with the ancient principle of evidence, that one shall not be compelled, in any proceeding to make disclosures or to give testimony which may tend to incriminate him, or subject him to fines, penalties, or forfeitures, to be used against him in a criminal proceeding subsequently instituted, it has come to be construed, as declared by the Supreme Court of the United States in *Counselman v. Hitchcock,* 142 U. S., 547, 12 Sup. Ct., 195; 35 L. Ed., 1110, thus:

"The object was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime."

The privilege, we think, should be extended even further than this, and held to cover testimonial compulsion under any circumstances. The line of cleaverage is whether the proposed evidence is the testimony of the defendant, or evidence in itself, unaided by any statement of the defendant.

The distinction is clearly drawn by Mr. Wigmore, in Volume 4 (1st Ed.), § 2664:

(1) "It follows that the production of documents or chattels by a person (whether ordinary witness or party witness) in response to a subpoena, or to a motion to order production, or to other form of process treating him as a witness (i. e., as a person appearing before the tribunal to furnish testimony on his moral responsibility for truth telling), may be refused under the protection of the privilege; and this is universally conceded. For though the disclosure thus sought be not oral in form, and though the documents or chattels be already in existence, and not desired to be first written and created by a testimonial of the person in response to the process, still no line can be drawn short of any · process which treats him as a witness; because, in virtue of it, he would be at any time liable to make oath to the

identity, or authenticity, or origin of the articles produced.

(2) "It follows, on the other hand, that documents or chattels obtained from the person's control, without the use of process against him as a witness, are not in the scope of the privilege, and may be used evidentially; for obviously the proof of their identity, or authenticity, or other circumstances affecting them, may and must be made by the testimony of other persons, without any employment of the accused's oath, or testimonial responsibility."

In the case at bar the defendant was not being treated as a witness; the shoe and the comparison of the shoe with the track were not the testimony of the defendant, but of the Sheriff, distinct from anything she may have said or done; the shoe was obtained from her control without the use of any process against her as a witness; she was not necessary to establish its authenticity, identity, or origin, which facts were established by the testimony of the Sheriff. The point is very strongly stated in *State v. Flynn,* 36 N. H., 64, cited by Mr. Wigmore:

"Its ground [of the objection] is, rather, that information obtained by means of a search warrant, in a case not authorized by the Constitution, is not competent to be given in evidence, because it has been obtained by compulsion from the defendant himself, in violation of the clause of the Constitution, which provides that no person shall be compelled to furnish evidence against himself. * * * It seems to us an unfounded idea that the discoveries made by the officers and their assistants, in the execution of process, whether legal or illegal, or where they intrude upon a man's privacy without any legal warrant, are of the nature of admissions made under duress, or that it is evidence furnished by the party himself upon compulsion. The information thus acquired is not the admission of the party, nor evidence given by him, in any sense. The party has in his power certain mute witnesses, as they may be called, which he endeavors to keep out of sight, so that they may not dis-

close the facts which he is desirous to conceal. By force or fraud access is gained to them, and they are examined, to see what evidence they bear. That evidence is theirs, not their owners.   *   *   *   It does not seem to us possible to establish a sound distinction between that case, and the case of the counterfeit bills, the forger's implements, the false keys, or the like, which have been obtained by similar means. The evidence is in no sense his."

Supporting the very clear theory of Mr. Wigmore in the case of *Burdeau v. McDowell,* 256 U. S., 465; 41 Sup. Ct., 574; 65 L. Ed., 1048; 13 A. L. R., 1159, the latest decision upon the subject: The Fifth Amendment, as its terms import, is intended to secure the citizen from compulsory testimony against himself. It protects from extorted confessions or examinations in Court proceedings by compulsory methods; and, we think, from forced conduct outside of Court proceedings, which may be presented as evidence.

A comparison of the cases of *Boyd v. U. S.,* 116 U. S., 616, 6 Sup. Ct., 524; 29 L. Ed., 746, and *Adams v. New York,* 192 U. S., 585; 24 Sup. Ct., 372; 48 L. Ed., 575, makes clear the distinction between compelling the defendant to produce books and papers, and the introduction of documents or other articles obtained from the possession of the defendant, legally or illegally, sustaining the principle announced by Mr. Wigmore that the inhibition is limited to testimonial compulsion. So in the case of *Duren v. Thomasville,* 125 Ga., 1; 53 S. E., 814, the Court declares:

"The criterion is: Who furnished or produced the evidence? If the person suspected is made to produce the incriminating evidence, it is inadmissible. *Evans v. State,* 106 Ga., 519; 32 S. E., 659; 71 Am. St. Rep., 269. But if his person or belongings are searched by another, although without a vestige of authority, the evidence thus discovered may be used against him."

The case of *State v. Atkinson,* 40 S. C., 363; 18 S. E., 1021; 42 Am. St. Rep., 877, is not applicable for the reason that there the defendant was not compelled to supply the evidence of papers found in his room, but the approved extract from Greenleaf on Evidence is applicable:

"Though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility, if.they are pertinent to the issue. The Court will not take notice how they are obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question."

In *State v. McIntosh,* 94 S. C., 439; 78 S. E., 327, while the defendant was in jail, the chief of police ordered him to take off his shoe, and give it to him; he did so; the shoe was compared with the tracks found near the scene of the crime; the shoe, and testimony of the similarity of the track made by it, on the foot of a witness, with the tracks under suspicion, were admitted in evidence against the defendant and over his protest. Upon appeal the Court upon the authority of the Atkinson Case, Greenleaf on Evidence, *Adams v. New York,* 192 U. S., 585; 24 Sup. Ct., 372; 48 L. Ed., 575. *State v. Garrett,* 71 N. C. 85; 17 Am. Rep., 1, and 30 A. & E. Enc. L., 1159, held:

"The admission of the evidence did not violate the constitutional right of the defendant."

In *State v. Harley,* 107 S. C., 304; 92 S. E., 1034, a room adjoining that in which the defendant was arrested was locked, the key to which was on the defendant's person. It was opened by command of the officer at the time of the arrest, and paraphernalia connected with a lottery was discovered. The Court held that such paraphernalia were properly introduced, saying:

"It does not appear that the books and papers in question were illegally seized, but, even if they had been so seized,

they nevertheless would have been admissible in evidence"
—citing the *Atkinson* and *McIntosh Cases.*

In *State v. Reeves,* 112 S. C., 383; 99 S. E., 841, it was
held, quoting syllabus:

"In prosecution for carrying on the business of emigrant
agent without securing a license, papers and documents
found on defendant after he was arrested and taken from
him by police officers were admissible."

In the case of *State v. Green,* 121 S. C., 230; 114 S. E.
317, before the defendant was arrested, the officers went
to his home and found him working with the sleeve of a
shirt. He had something in his hand; they compelled him
to open his hand, and took from him a cuff button which
the State offered in evidence, contending that it had eviden-
tiary connection with the crime. Its admission constituted
an assignment of error. Upon the authority of *State v.
Atkinson,* 40 S. C., 371; 18 S. E., 1021; 42 Am. St. Rep.,
877, and *State v. McIntosh,* 94 S. C., 441; 78 S. E., 327,
the exception was overruled. In the opinion of the Court,
Mr. Justice Fraser pertinently observes:

"The rule contended for would paralyze the administra-
tion of justice in many cases. The pickpocket could never
be convicted. You know you had your pocketbook just
before you met him. You know you did not have it just
after he passed. You seized him and called an officer.
The thief is searched, and the pocketbook is found on him.
The only possible evidence of his guilt is his immediate
possession of the stolen property, and yet we are asked to
hold that he must go free, because he was arrested and
searched by force without a warrant. That is not the
law in the Federal or State Courts."

See, also, *State v. Kanellos,* 124 S. C., 514; 117 S. E.,
640, *State v. Prescott,* 125 S. C., 22; 117 S. E., 637, and
*State v. Maes* (S. C.) 120 S. E., 566.

The writer, speaking for himself only, in the absence
of specific concurrence of the other Justices of this Court,

is of opinion that the case of *Blacksburg v. Beam,* 104 S. C., 146; 88 S. E., 441; L. R. A., 1916E, 714, is out of line with the later decisions of this Court, particularly *State v. Green,* 121 S. C., 230; 114 S. E., 317. *State v. Prescott,* 125 S. C., 22; 117 S. E., 637, and *State v. Kanellos,* 124 S. C., 514; 117 S. E., 640, and should be expressly overruled.

In *Chastang v. State,* 83 Ala., 29; 3 South. 304, the defendant was arrested and required to hold up his hands, while an officer searched him and found a pistol in his pocket. Upon trial for carrying concealed weapons, the evidence was objected to upon the constitutional ground. The appellate Court sustained the admission of the evidence, saying:

"In the present case the defendant was required to produce nothing, to testify to nothing, and no presumption was indulged against him as a penalty for his failure to comply with any order of Court."

To the same effect is *Shields v. State,* 104 Ala., 35; 16 South. 85; 53 Am. St. Rep. 17, which contains an opinion of interest by Chief Justice Brickell, quoting with approval the above extract from the Flynn Case.

In *Starchman v. State,* 62 Ark., 538; 36 S. W., 940, it was held upon a trial for burglarizing the county treasurer's safe, that drills fitting the holes in the safe, found in the defendant's home, were admissible in evidence even if they had been illegally seized, citing *State v. Flynn,* 36 N. H., 64; *Com. v. Dana,* 2 Metc. (Mass.), 329.

In *Ricketts v. State* (Okl. Cr. App.), 215 Pac., 212, the defendant, under arrest, in the custody of the Sheriff, was compelled to take off his shoes; the shoes were taken to the place where the theft was committed, and fitted into the tracks there found. The Court held that the evidence was admissible; that the conduct of the officer did not violate the defendant's constitutional right not to be compelled to give evidence against himself, saying:

"The principle purpose of the provision was to prohibit compulsory examination of prisoners before trial or upon trial, for the purpose of exhorting unwilling confessions or declarations implicating them in crime"—citing Story, Const. Lim. § 1788; *People v. Van Wormer,* 175 N. Y., 188; 67 N. E., 299; *Magee v. State,* 92 Miss., 865; 46 South., 529; *State v. Graham,* 74 N. C., 646; 21 Am. Rep., 493; 4 Wigmore, Evidence, § 2230; *Morris v. State,* 124 Ala., 44; 27 South., 336; *Myers v. State,* 97 Ga., 76; 25 S. E., 252; *State v. Fuller,* 34 Mont., 12; 85 Pac., 369; 8 L. R. A. (N. S.), 762; 9 Ann. Cas., 648.

In *Gore v. State* (Okl. Cr. App.), 219 Pac., 153, it was held, quoting syllabus:

"Evidence of the taking of the shoes from an accused person under arrest, charged with murder, for the purpose of ascertaining whether they correspond to the tracks found near the place of the homicide under the circumstances here, may be introduced by the State, over the objection of the accused that evidence so obtained is in violation of his constitutional right to immunity from being compelled to give incriminating evidence against himself."

In *State v. Pluth* (Minn.) 195 N. W., 789, it is held, quoting syllabus:

"The use as evidence of incriminating articles wrongfully taken from the possession of the accused does not compel him to be a 'witness against himself' within the inhibition of the State Constitution."

In *People v. Breen,* 192 Mich., 39; 158 N. W., 142, it was held that, where the defendant's shoes were taken by an officer for the purpose of comparing them with footprints, and the officer was permitted to testify to the comparison, the defendant was not thereby compelled to give evidence against himself.

In *People v. Van Wormer,* 175 N. Y., 188; 67 N. E., 299, after the arrest of the defendants, their shoes were taken from them and placed in tracks leading to the house

of the deceased, made in the snow on the night of the murder supposedly by the parties who committed the murder. The shoes corresponded with the tracks, and evidence of this fact, against objection by defendants, was admitted. The Court said:

"It is contended that the seizure of the shoes, and their comparison with the footprits was compelling the defendants to be witnesses against themselves, and a violation of their constitutional safeguard. This claim is entirely disposed of by the decision of this Court in *People v. Gardner,* 144 N. Y., 119; 38 N. E., 1003; 28 L. R. A., 699; 43 Am. St. Rep., 741."

In *People v. Gardner,* 144 N. Y., 119; 38 N. E., 1003; 28 L. R. A., 699; 43 Am. St. Rep., 741, the Court said:

"The main purpose of the provision was to prohibit the compulsory oral examination of the prisoners before trial, or upon trial for the purpose of exhorting unwilling confessions or declarations implicating them in crime. It could reach further only in exceptional and peculiar cases coming within the spirit and purpose of the inhibition. A murderer may be forcibly taken before his dying victim for identification, and the dying declarations of his victim may then be proved upon his trial for his identification. A thief may be forcibly examined, and the stolen property may be taken from his person and brought into Court for his identification. A prisoner's person may be examined for marks and bruises, and then they may be proved upon his trial to establish his guilt; and it would be stretching the constitutional inhibition too far to make it cover such cases and cases like this, and the inhibition thus applied would greatly embarrass the administration of justice."

In *Montana v. Fuller,* 34 Mont., 12; 85 Pac., 369; 8 L. R. A. (N. S.), 762; 9 Ann. Cas., 648, it was held, quoting syllabus:

"Forcibly taking shoes from an accused person for purposes of comparison with footprints does not violate his

·constitutional right not to be compelled to give evidence against himself."

In *Moss v. State,* 146 Ala., 686; 40 South., 340, it was mony of witnesses describing shoes worn by the defendant held that testimony of witnesses describing shoes worn by the defendant when arrested is not inadmissible, because he was requested by an officer to take off his shoes for the purpose of inspection.

In *Myers v. State,* 97 Ga., 76; 25 S. E., 252, the officer in charge of the prisoner ordered his shoes to be taken from him for the purpose of comparing them with tracks found near the place, where the body of the murdered man was discovered. The Court held that the evidence of the comparison was admissible, saying:

"It was the duty of the officer to have taken from the possession of the defendant any article which he might have that would throw any light upon the circumstances of his guilt or innocence, and preserve it for use at the trial."

In *State v. Edwards,* 59 W. Va., 220; 41 S. E., 429; 59 L. R. A., 465, the charge was larceny, committed in substituting worthless state bank bills. Upon his arrest the defendant was searched, and other bank bills of the same character were found upon his person. On the trial they were admitted in evidence, and upon appeal it was held that there was no error in so doing; the Court saying:

"Where a man stands charged with crime, and an instrument or devise is found upon his person or in his possession which was a part of the means by which he accomplished the crime, those instruments, devices, or tokens are legitimate evidence for the State, and may be taken from him and used for that purpose."

We can see no valid distinction between these cases and the one at bar. *People v. Adams,* 176 N. Y., 351; 68 N. E., 636; 63 L. R. A., 406; 98 Am. St. Rep., 675; *Com. v. Tibbetts,* 157 Mass., 519; 32 N. E., 910; *State v. Mallett,*

125 N. C., 718; 34 S. E., 651; *Russell v. State,* 66 Neb.,
497; 92 N. W., 751; *Wigmore,* Evidence, § 2264.

In the case of *Adams v. New York,* 192 U. S., 585; 24
Sup. Ct., 372; 48 L. Ed., 575, it is held, quoting syllabus:
"The fact that papers, which are pertinent to the issue,
may have been illegally taken from the possession of the
party against whom they are offered is not a valid objection
to their admissibility. The Court considers the competency
of the evidence and not the method by which it was ob-
tained."

In *Weeks v. U. S.,* 232; U. S., 383; 34 Sup. Ct., 341;
58 L. Ed., 652; L. R. A., 1915B, 834; Ann. Cas., 1915C,
1177, the Court recognized the authority of the *Adams
Case* in 192 U. S., 385; 24 Sup. Ct., 372; 48 L. Ed., 575,
that an incidental seizure of incriminating papers, made in
the execution of a legal warrant, and their use as evidence
is justified, and a collateral issue will not be raised to as-
certain the source of competent evidence.

In *State v. Garrett,* 71 N. C., 85; 17 Am. Rep. 1, one
charged with murder had said that the deceased was acci-
dentally burned to death, and that she had burned her hand
in trying to put the fire out. Her hand being wrapped up,
she was compelled, against her protest, by the coroner, to
unwrap the hand, and evidence that it showed no sign of
burning was held admissible on the trial.

In *State v. Nordstrom,* 7 Wash., 506; 35 Pac., 382, boots
and socks, taken off the prisoner at the time of his arrest,
were held admissible; the Court saying:

"It has never been held that personal effects of every kind
could not be taken from the person of a prisoner, and used
upon his trial for what they may be worth as criminating
evidence."

See, also, *Springer v. State,* 121 Ga., 155; 48 S. E., 907;
*State v. Aspara,* 113 La., 940; 37 South., 883; *Lawrence
v. State,* 103 Md., 96; 63 Atl., 96; *State v. Schmidt,* 71
Kan., 862; 80 Pac., 948; *Com. v. Tucker,* 189 Mass., 457;

76 N. E., 127; 7 L. R. A. (N. S.) 1056; *Johnson v. State*
(Tex. Cr. App.) 76 S. W., 925; *State v. Royce,* 38 Wash.,
111; 80 Pac., 268; 3 Ann. Cas., 351; *People v. McCurdy,*
68 Cal., 576; 10 Pac., 207; *England v. State,* 89 Ala., 76;
8 South., 146; *People v. Rowell,* 133 Cal., 39; 65 Pac., 127;
*State v. Morris,* 84 N. C., 756; *People v. Keep,* 123 Mich.,
231; 81 N. W., 1097; *Com. v. Pope,* 103 Mass., 440;
*Squires v. State,* 39 Tex. Cr. R., 96; 45 S. W., 147; 73
Am. St. Rep., 904; *State v. Fuller,* 34 Mont., 12; 85 Pac.,
369; 8 L. R. A. (N. S.) 762; 9 Ann. Cas., 648; *Shreveport
v. Knowles,* 136 La., 770; 67 South., 824; *State v. Wallace,*
162 N. C., 622; 78 S. E. 1, Ann. Cas. 1915B, 423; *Pringle
v. State,* 108 Miss., 802; 67 South., 455; *State v. Ware,*
79 Or. 367; 154 Pac., 905; 155 Pac., 364; *Calhoun v. State,*
144 Ga., 679; 87 S. E., 893; *State v. Lyen,* 176 Iowa, 171;
157 N. W., 742.

In Best on Evidence, § 201, numerous instances are given
of the use of what is called "real" evidence, resulting from
the search of the person of the accused after his arrest; as
by comparing a portion of a knife blade left in a burglarized
window, with a knife in the pocket of the accused, or
comparison of the paper wadding found in a wound with
a torn printed paper in the prisoner's pocket.

The writer recalls that in the case of *State v. Green.* 48
S. C., 136; 26 S. E., 234, a horrible case of adultery, con-
spiracy, and murder, the wife of the deceased Carson, and
her paramour, Green, were convicted of the murder; the
deceased was found in his bed with his throat cut from ear
to ear; in the trough of the gaping wound was found the
fragment of the blade of a razor, upon which was etched
in the steel a portion of the figure of a fish, from which
it was concluded that the razor used was of a kind known
as a "Fish" razor. Could it be contended that, if the
defendant Green had been forcibly searched, and a Fish
razor found upon his person, with a gap in it correspond-

ing with the piece found in the wound, the razor could not have been offered in evidence?

Cases have occurred where, as a result of the struggle, a scrap of the murderer's clothes, a button from his coat, a cuff button, or other article, has been found at the scene of the murder, sometimes in the hand of the victim, or upon a nail or wire fence; could it be contended that the corresponding part of his personal effects, forcibly taken from him, could not be offered in evidence?

It is necessary in the detection of crime, in the administration of justice, in the protection of the arresting officer, in the safekeeping of the prisoner in jail, that his person be searched, forcibly if need be, for evidence and weapons The tools of a burglar, counterfeit money, a bloody knife, a pistol recently fired, are all logically and justly admissible in evidence to connect the suspect with the crime, and the law will not be hypercritical, as to the method by which they may have been secured.

In the case of *State v. Danelly,* 116 S. C., 113; 107 S. E., 149; 14 A. L. R., 1420, it is decided even in the case of an illegally extorted confession, so much of it, as led to a discovery of material facts and those facts, may be received in evidence. There the facts discovered in an unlawful manner become evidence, not the confession of the accused. What is being sought for is the truth, and the reason why an extorted confession is not received is the improbability or, at least, uncertainty of its truth; but no threat, fear, or hope of reward can alter the fact discovered in consequence of the confession.

As to the second question: Touching the admissibility of the Sheriff's testimony as to compelling the defendant to put her foot in the track, and her conduct in doing so. From the principles discussed in connection with the first question, it appears, indisputably, that this evidence falls on the wrong side of the line of cleavage. If the conformity had been perfect, that fact would have

appeared from the enforced conduct of the defendant, clearly testimonial compulsion. If otherwise, as appeared. the inference of guilt from the effort to obliterate the track would have been a legitimate basis of comment; it would have been supplied by the defendant, a clear cut case of testimonial compulsion, as Mr. Wigmore aptly terms it.

Where the accused has been required, either in or out of Court, to make footprints, in order that they might be compared with those in the vicinity of the crime, it has been held to be requiring him to give testimony, and therefore an invasion of his constitutional right. *Day v. State,* 63 Ga., 667. *Stokes v. State,* 5 Baxt. (Tenn.), 619; 30 Am. Rep., 72.

In the case of *Cooper v. State,* 86 Ala., 610; 6 South., 110; 4 L. R. A., 766; 11 Am. St. Rep., 84, the prosecuting witness, while the defendant was under arrest, offered that, if the defendant would compare his stockinged foot with a certain track, and it did not correspond, he would be released, which offer the defendant declines; it was held that evidence of those facts was inadmissible as violative of the constitutional immunity.

In *State v. Green,* 121 S. C., 230; 114 S. E., 317, the printed record shows (though the report does not) that his Honor Judge Edward McIver admitted evidence that the officers had forced the defendant to place his foot in the track outside the window of the prosecutor's house, but later reversed his ruling, and directed the jury to disregard the evidence.

In *State v. Atkinson,* 40 S. C., 363; 18 S. E., 1021; 42 Am. St. Rep., 877, there was evidence that certain tracks were those of the defendant, by reason of the fact that, when he placed his foot in one of the tracks, it fitted the same; "but when it was made to appear that this defendant had been required by the officer in charge to put his foot in the tracks discovered, and to make other tracks by running, which could be compared with the others, originally found,

the circuit judge [Judge Wallace], on the motion of defendant's counsel, ordered the testimony as to the tracks obtained by compulsion to be stricken out, adding these words: 'I will say to the jury now that no defendant can be compelled to make evidence against himself, just as he cannot be compelled to testify as to his guilt.' " The above is from the opinion of Chief Justice McIver; the absence of comment is strong evidence of his approval.

The facts of this case parallel those in the case of *Elder v. State,* 143 Ga., 363; 85 S. E., 97, as completely as the alleged correspondence of the defendant's shoe with the tracks in the garden. We are content to adopt the reasoning of the Georgia Court and it conclusions. There the facts are thus stated:

"The accused was in charge of the Sheriff and certain other persons, when he was brought to the place where the tracks were under examination. He was under arrest and handcuffed. * * * He did not, until commanded to do so, approach the tracks and put his foot in them. He did this only when the Sheriff, who had him in custody, whose command he would not have dared to disobey under the circumstances, bade him in peremptory terms to put his foot in the tracks. It is true the Sheriff says that he did not try to persuade him to do this, and that he did not threaten him, but the facts stand that this officer, who had a badly frightened man in his custody, said to him, 'Put your foot in that track,' and then the conformability of the foot to the track was testified to by the witnesses for the State on the trial."

The facts in the case at bar are stronger in favor of the defendant than this, for the evidence shows that, when asked to put her foot in the tracks, the defendant refused, and that, then the Sheriff made her sit down and take off her shoe, and that then he fitted it to the track. The Georgia Court says:

"The evidence as to the foot of the accused fitting the track should have been excluded upon objection being made thereto under the provision of the Constitution of this State, which declares that 'no person shall be compelled to give testimony tending in any manner to criminate himself. * * * In the interest of justice, we think that the evidence gotten by means and under the circumstances shown to exist at the time should have been excluded, and, as it was not excluded, the case should be remanded for another trial."

We are of opinion, therefore, that the evidence referred to in the second question, above stated, was inadmissible and prejudicial, and its admission constituted reversible error.

The judgment of this Court is that the judgment of the County Court be reversed, and that the case be remanded to that Court for a new trial.

MESSRS. JUSTICES WATTS, FRASER, and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.