15947

STATE v. ADDY
(42 S. E. (2d) 585)

354

*Messrs. J. A. Hutto* and *Kenneth R. Kreps,* of Columbia, for Appellant, cite:

*Mr. T. P. Taylor,* Solicitor, of Columbia, for Respondent. May 14, 1947.

FISHBURNE, AJ.: The defendant was convicted upon an indictment charging him with the operation of a lottery or "Numbers" game, in violation of Section 1231, 1942 Code. He offered no testimony, and upon close of the evidence introduced by the state he moved for the direction of a verdict of not guilty, which was overruled. His appeal is from this order, and from certain rulings in connection with the admission of testimony.

The record shows that three or four detectives went to the home of Rosa Lorick (a negro), on Wayne Street in the city of Columbia, between seven and eight o'clock on the night of August 26, 1946, for the purpose of apprehending the appellant, James C. Addy, whom they suspected of con-

ducting what is commonly known as the "Numbers" racket. They found her at home, darkened the house, secreted themselves therein, and awaited the arrival of the appellant. When he walked upon the front porch one of the officers opened the screen door and seized him, whereupon he quickly threw to one end of the porch a small black bag which he had in his hand. This bag when opened by the officers was found to contain two adding machine slips, one of which showed a total of $16.19 with figures in pencil deducted therefrom, indicating a balance of $8.65. The other showed a total of $16.80, with figures in pencil subtracted therefrom, indicating a balance of $12.60. Upon searching the person of the appellant the officers discovered and took from him $115.00 in currency and eighteen cents in coins, all of which was offered in evidence.

Rosa Lorick, who was charged in a separate indictment with the same offense, and who was an admitted accomplice of the defendant in operating the lottery, testified for the state under a promise from the solicitor that if she would tell the truth he would recommend probation in her case, which is a practice not infrequently followed in criminal cases. 22 C. J. S., Criminal Law, § 46, page 105; 22 C. J. S., Criminal Law, §§ 805, 808, at pages 1381 and 1387.

When searching her house on the night of August 26th, the officers found a book of paper slips bearing an identification number, with carbon sheets in triplicate. She testified that this book was one of several given to her by the appellant with which to conduct the lottery, and that she had been employed by and was an accomplice of appellant for over a year. In selling the slips she would write a certain number thereon and give it to the purchaser. The winning number would be thereafter ascertained from some figure or combination of figures appearing on a certain page of *The State,* a daily newspaper published in the city of Columbia. Each slip bore her own personal identification number —"49"— and she turned the duplicates over to appellant, who paid her

twenty-five cents out of every dollar of business written by her.

The money received by Rosa Lorick from the sale of tickets was turned over to appellant, who customarily came to her home every night, usually around eleven o'clock to collect and pay off. He told her that he came after dark because the lottery game was against the law. She explained that the adding machine slips introduced in evidence, which appellant attempted to conceal, as heretofore pointed out, showed the cash receipts from various sales of tickets made by her—each containing the number "49" written in pencil, which was her identification number. It was brought out that she had received settlement slips of this kind from Addy on previous occasions.

The first assignment of error challenges the action of the court in admitting as evidence against the accused the $115-.00 in currency and eighteen cents in coins which had been found upon his person at the time of his arrest. It is argued that there is no evidence offered by the state which in any way connected this money with the operation of a lottery or with the commission of any other crime. Appellant contends that the admission of the money in evidence was in no wise connected with any other testimony tending to prove his guilt.

In *State v. Griffin*, 129 S. C. 200, 124 S. E. 81, 83, 35 A. L. R. 1227, the court quoted with approval the following extract from Greenleaf (1 Greenleaf on Evidence, Sec. 254): " ' * * * Though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they are obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question.' "

In the *Griffin case* the court dealt exclusively with this principle of the law of evidence, citing many cases from this and other jurisdictions to sustain the proposition. The reasoning for the adoption of this rule of evidence is clearly stated in *State v. Green,* 121 S. C. 230, 114 S. E. 317, 319: "The rule contended for would paralyze the administration of justice in many cases. The pickpocket could never be convicted. You know you had your pocketbook before you met him. You know you did not have it just after he passed. You seize him—and call an officer. The thief is searched, and the pocketbook is found on him. The only possible evidence of his guilt is his immediate possession of the stolen property, and yet we are asked to hold that he must go free, because he was arrested and searched by force without a warrant. That is not the law in the federal or state courts."

The latest case in which this rule of evidence has been approved is *State v. Cook,* 204 S. C. 295, 28 S. E. (2d) 842.

The prime question to be determined here in passing upon this issue is whether the admission in evidence of the money taken from the accused was pertinent. In our opinion, the introduction in evidence of this money was, under the circumstances of this case, entirely admissible. It was just as relevant as the other incriminating articles offered in evidence, such as the adding machine slips and the book of triplicate sheets discovered in the house of Rosa Lorick, which was given to her by the appellant. The money constituted legally competent evidence which, together with the other evidence in the case, tended to shed light upon the whole transaction in such a way as to enable the jury to draw a logical inference with respect to the principal fact in issue.

Error is assigned because the court permitted the state's witness, H. T. Snipes, a police officer, to testify over objection that the appellant had on a previous occasion been charged with violation of the lottery law, and had forfeited bond.

358

The exception raising this issue is evidently taken under a misapprehension. The matter under discussion arose in this way: After his arrest, the accused was taken to police headquarters, and Policeman Snipes undertook to narrate the conversation then engaged in between the prisoner and Mr. Rawlinson, the Chief of Police. He stated that appellant asked "to put up bond and forfeit it like he had before, but the Chief said 'No, you were caught last week, and I told you, if you didn't quit, I would send you to Higher Court.'" It was only after this testimony was brought out in detail that counsel for appellant objected on the ground of its prejudicial character. Upon objection being made, the court promptly ordered that the testimony be stricken out.

When the witness, Snipes, was being cross examined by counsel for the accused, he stated that appellant had been convicted twice before for violation of the lottery law. The answer was not in response to the question asked and upon objection it was stricken out by the court.

However, we are not to be understood as holding here that the evidence objected to with reference to the previous violation of the lottery law by the accused, a week prior to his arrest, was inadmissible. We do not find it necessary to decide the question, but see *State v. Owens,* 124 S. C. 220, 117 S. E. 536, and *State v. Shumpert,* 195 S. C. 387, 11 S. E. (2d) 523.

Finally, it is urged that the court erred in overruling the defendant's motion for a directed verdict of acquittal, made upon the ground that the evidence was insufficient to sustain a conviction for violation of Section 1231 (the lottery law).

We have given careful consideration to all of the evidence contained in the record, and in our opinion there can be no doubt that there was sufficient evidence offered by the state warranting the action of the court in submitting the case to the jury.

Judgment affirmed.

STUKES and OXNER, JJ., concur.

BAKER, CJ., and TAYLOR, J., concur in result.

TAYLOR, AJ. (concurring in result).

I wish to concur in what MR. JUSTICE FISHBURNE has said for the Court in the proposed opinion in the above case with the exception of the following: "Rosa Lorick, who was charged in a separate indictment with the same offense, and who was an admitted accomplice of the defendant in operating the lottery, testified for the state under a promise from the solicitor that if she would tell the truth he would recommend probation in her case, which is a practice not infrequently followed in criminal cases. 22 C. J. S., Criminal Law, § 46, page 105."

Since this question was not raised either at the trial or upon appeal, this of course becomes *obiter dictum*. This practice has never been approved in the State of South Carolina; and in order that this Court might not be understood as sanctioning such, I, therefore, concur in the result only.

BAKER, CJ., concurs.