## STATE v. GAULT

### (136 S. E., 739)

1. CRIMINAL LAW—OBJECTION TO EVIDENCE BASED ON INSUFFICIENCY OF SEARCH WARRANT HELD WITHOUT MERIT, WHERE OFFICERS WERE GIVEN ENTRY WITHOUT USE OF WARRANT.—In prosecution for violation of prohibition law, where officers testified that, on going to defendant's house, the door was opened for them, and they went in and obtained evidence, on which defendant was convicted, without use of search warrant, *held,* entry was not effected by means of warrant, and objection to evidence based on insufficiency of warrant was without merit.

2. INTOXICATING LIQUORS—EVIDENCE HELD FOR JURY, IN PROSECUTION FOR STORING AND POSSESSING WHISKEY.—Evidence *held* sufficient to go to jury, in prosecution for storing, having, and keeping in possession of whiskey.

3. INTOXICATING LIQUORS—EVIDENCE HELD FOR JURY ON QUESTION WHETHER LIQUOR FOUND CONTAINED MORE THAN 1 PER CENT. ALCOHOL.—Testimony of state's witness that liquor was corn liquor or whisky, and testimony that defendant himself had· said, "It was my liquor," *held* sufficient to go to jury on question whether liquor found contained more than 1 per cent. alcohol.

4. CRIMINAL LAW—COURTS JUDICIALLE KNOW THAT WHISKEY, BRANDY, GIN, RUM, PORTER, AND STRONG BEER ARE INTOXICATING.—Courts

will take judicial notice that whiskey ,brandy, gin, rum, porter, and strong beer are intoxicating liquors.

5. CRIMINAL LAW—FAILURE TO REQUEST FURTHER OR ADDITIONAL INSTRUCTION HELD TO PRECLUDE COMPLAINT, ON APPEAL.—In prosecution for storing and possessing whisky, failure of defendant's counsel to request further or additional instruction *held* to preclude complaint of instruction, on appeal.

6. INTOXICATING LIQUORS—INSTRUCTION AS TO WHAT CONSTITUTED UNLAWFUL POSSESSION, AND THAT MERE TEMPORARY POSSESSION WOULD NOT CONSTITUTE STORING, HELD NOT ERRONEOUS, AS STATEMENT THAT MERE TEMPORARY POSSESSION WARRANTED CONVICTION FOR HAVING IN POSSESSION.—In prosecution for storing and possessing whiskey, instruction that it was unlawful to possess contraband liquor; that possession might be actual or constructive; and that control or dominion over liquor constituted possession in the eyes of the law, but that a temporary possession did not constitute a storing of liquor, *held* not erroneous, as statement that mere temporary possession was sufficient to warrant conviction for having in possession.

7. CRIMINAL LAW—INSTRUCTION, "WE HAVE THIS MAN HERE CHARGED WITH VIOLATING THE LAW," HELD NOT PREJUDICIAL, AS INDICATING COURT'S OPINION.—In prosecution for storing and possessing whiskey, instruction, "Under the state of South Carolina we have this man here charged with violating the law," *held* not prejudicial, as indicating that judge was party to prosecution, and that he thought perhaps defendant should be convicted.

Before FEATHERSTONE, J., Spartanburg, January, 1926. Affirmed.

Theo M. Gault was convicted of storing, having, and keeping in possession of whiskey, and he appeals.

The following are defendant's exceptions:

### Exception 1.

In that his Honor erred in allowing the witness, S. M. Henry, to testify as to finding whiskey in the house of the defendant-appellant, when the testimony showed that the witness, who was an officer, went into defendant's dwelling house in the nighttime, by virtue of a search warrant, and that the warrant was executed by parties who swore it out; the sole testimony being that the search was between 8:30 and 9:30 o'clock at night.

### Exception 2.

In that his Honor erred in allowing the testimony—for the reason that it was shown that J. W. Splawn swore out one warrant and that H. H. Hatchett swore out the other— that H. H. Hatchett, chief of the rural policemen, swore out the search warrant, and J. W. Splawn swore out the arrest warrant; that J. W. Splawn was also a rural policeman; and that these two officers took part in the search and seizure, and their testimony should have been excluded, and all testimony discovered against the defendant under this so-called search warrant and arrest warrant, which was gotten merely as a subterfuge.

### Exception 3.

In that his Honor erred in allowing the witness, G. C. Hayes, to testify as to finding whiskey in the dwelling house of the defendant-appellant, when the testimony showed that the witness, who was an officer, went into defendant's dwelling house, in the nighttime, by virtue of a search warrant, and that the warrant was executed by parties who swore it out; the sole testimony being that the search was between 8:30 and 9:30 o'clock at night.

### Exception 4.

In that his Honor erred in allowing the testimony, for the reason that it was shown that J. W. Splawn swore out one warrant, and that H. H. Hatchett swore out the search warrant—that both were officers, and that they took part in the search, and all testimony discovered against the defendant under this so-called search warrant, which was gotten merely as a subterfuge.

### Exception 5.

That his Honor erred in refusing to direct a verdict of not guilty as to storing whiskey, in that there was no testimony from which a reasonable inference could be drawn, that the defendant was storing whiskey, there being no testimony

that the whiskey was placed in there under the direction of the defendant, or that he acquiesced in it, or that he knew of it, or had guilty knowledge thereof.

### Exception 6.

In that there was no testimony that the defendant had committed any act of laying away, stocking, or furnishing against a future time; neither was there any testimony of continuity, and his Honor was in error in refusing to direct a verdict of not guilty as to storing.

### Exception 7.

In that there was no testimony to support the charge of keeping in possession; that the defendant had habitually in stock or for sale, or to have habitually in attendance or use, or to maintain habitually; there being no testimony of having or keeping in possession within the contemplation of the law, and his Honor erred in refusing to direct a verdict of not guilty.

### Exception 8.

His Honor erred in refusing to direct a verdict of not guilty; there being no testimony that the liquors found contained more than 1 per cent. of alcohol.

### Exception 9.

That his Honor erred in charging the jury as follows: "'Now, it is against the law, Mr. Foreman and gentlemen, for a man to have in his possession contraband liquor. And that possession may be actual, or it may be constructive. If he has dominion and control over it, even though it may have been put there by somebody else, even though it may have been put there in pursuance of an agreement by him and somebody else, if it was there where he could control it and have dominion over it, that constitutes possession in the eyes of the law. Now, as to storing, that must be continuous. As to the law of that, mere temporary possession would not constitute storing, and before a conviction

can be had on that count, or on the fifth count, either, you must be satisfied from the evidence beyond a reasonable doubt that there was some continuity connected with it. Now, so much for that"—the error being that his Honor incorrectly stated the law of having in possession, by giving to the jury that a mere temporary possession was sufficient to warrant a conviction of having in possession.

### Exception 10.

His Honor erred in charging the jury as follows: "Under the State of South Carolina, we have this man here," etc.— the error being that his Honor, by the use of the expression, "We have this man here, charged with violating the law," conveyed to the jury the impression that his Honor was a party to the prosecution, thereby conveying to the jury that his Honor thought perhaps he should be convicted.

*Mr. L. G. Southard,* for appellant, cites: *No dwelling to be searched in nighttime:* Crim. Code, 1922, Sec. 853. *Case distinguished:* 130 S. E., 641. *No evidence of criminal intent:* 93 S. E., 13; 89 S. E., 402. *Where liquor may be kept:* Crim. Code, 1922, Sec. 872. *"Alcoholic liquors" defined:* Crim. Code, 1922, Sec., 878. *Nature of liquor claimed to be contraband must be proved:* 130 S. E., 213. *"Storing" defined:* 130 S. E., 642; 109 S. C., 411; 105 S. C., 28; 89 S. C., 132; 63 S. C., 98. *Judge impliedly expressed opinion as to guilt of accused:* 122 S. E., 856; 109 S. E., 119; 99 S. C., 221; 81 S. C., 374; 72 S. C., 350. *Evidence obtained through unlawful search inadmissible:* 115 S. C., 198; 114 S. C., 265; 104 S. C., 147; 251 U. S., 385. *Unreasonable searches prohibited:* 251 U. S., 385.

*Mr. I. C. Blackwood, Solicitor,* for respondent.

June 30, 1926.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE RAMAGE.

The defendant-appellant, Theo. M. Gault, was tried at the January, 1926 term of the Court of sessions for Spartan-

burg County and was convicted upon the charges of storing, having, and keeping in possession, and storing in dwelling house, of whiskey in violation of the prohibition law. In the admirable "brief" of the attorney for the appellant, a very clear and analytical discussion of the issues involved in this appeal is presented. A motion for a directed verdict was made in proper form and this motion was overruled by his Honor, Judge Featherstone. The first three exceptions together with the fourth exception have been grouped together by the attorney for the appellant, and substantially raise the question that it was error for his Honor to allow testimony as to the finding of liquor in the house of the said Gault, defendant, under the conditions set out in the testimony introduced by the State in this case.

The attorney for appellant asked permission to review the case of *State v. Prescott,* 125 S. C., 22; 117 S. E., 637, which was decided by the Court in *banc* and to attack said case, which permission was granted by acting Chief Justice Watts on the trial of this case. The Court is satisfied that *State v. Prescott,* having been decided by the highest tribunal known to the law, ought to be followed by this Court, and the Court hereby affirms the decision made in said case, as it feels bound by the solemn adjudication, made after full argument by learner counsel, and after a full consideration by the very able and learned judges who made up the Court in *banc* at the time said case was decided.

But aside from this, it clearly appears that there was sufficient testimony to go to the jury in this case; that the said entrance into the house of the defendant, Gault, was not effected by means of the warrant in this case, but that the door was open for the officers to go in, and they went in and obtained the testimony and facts upon which the defendant was convicted without having to resort to a search warrant or anything else to obtain admission into the house of Gault. Consequently there is nothing illegal about the obtaining of the testimony and there is noth-

ing whatever in the case upon which the first four exceptions of the defendant could be sustained. Where officers go into a house under the conditions detailed in the evidence here, and where the door is opened for them by the occupants of the house, we see nothing in such circumstances even to warrant a suggestion that the testimony was illegally obtained, and these exceptions, under the circumstances in this case are overruled. The witness, S. M. Henry, testified unequivocally that he knocked on the door, and the door was opened, and he walked in, and saw the whiskey on the table, and saw the vessels and smelled the odor of the whisky in the room. The witness, Henry, further testified that when the defendant, Gault, came in, that the witness asked Gault, "Well Theo. what do you want to do about it?" and that the defendant answered: "This is one time I believe I will die and go to hell before I do anything." He also testified that after a short while the defendant, Gault, got all right, and everything went on smooth and Gault came on to town, and made bond according to law. He further states that Gault said: "Turn Griffin loose; he didn't have anything to do with the liquor; it was my liquor." It does not appear that Gault ever made any objection to the manner of the search, and, in fact, the testimony was obtained in a perfectly legal way before Gault got there. As stated above, there is no foundation whatever in this case for the first four exceptions.

As to exceptions 5, 6, and 7, it appears that the question raised by them is that it was not shown that the testimony showed that the defendant was storing the whiskey found on his premises, or that he acquiesced in it, or that the whiskey was placed there under his direction, or that he had guilty knowledge of it, or that there was any testimony of continuity, etc., and that his Honor should have directed a verdict of not guilty in the case. As stated above, the testimony was clear that the defendant, Gault, said that it was his liquor and that he was responsible

for its being there and was responsible for it. Coupled with the fact that this liquor was found on his premises; that there were empty vessels on the premises which had evidently contained liquor; and that there was liquor on the table, a drinking glass, a funnel, a gallon can, two or three quart bottles, nearly a case of empty pint bottles, and in the closet four one-gallon cans full of corn whiskey, there certainly was sufficient evidence to carry the case to the jury under the counts of the indictment in this case which were submitted to the jury and was sufficient abundantly to warrant the jury in finding the verdict that they did in this case. Exceptions 5, 6, and 7 are therefore overruled and dismissed.

As to exception 8, error is alleged that his Honor erred in refusing to direct a verdict of not guilty; there being no testimony that the liquor found contained more than 1 per cent. of alchohol. The testimony of the state showed that it was corn liquor or whiskey that was found on the premises and that the defendant himself said: "It was my liquor." This, together with the circumstances in the case set out in the "case and exceptions," clearly made the character of the fluid found a question of fact for the jury. We quote from 33 Corpus Juris, p. 788:

"Generally, the question whether a certain liquid or liquor, or compound containing liquor is intoxicating and capable of use as a beverage or is otherwise within the language of the statute, * * * or is otherwise without the language of the statute, is one of fact to be determined by the jury."

This principle is supported by a long array of authorities from a number of states.

In 33 Corpus Juris, p. 786, the question of knowledge, intent, good faith, prospective use, continuity of possession, etc., are all matters to be submitted to the jury and are questions for their determination.

"The Courts take judicial notice that whiskey, brandy, gin, rum, porter, and strong beer are intoxicating liquors." 33 Corpus Juris, p. 496.

This exception is also overruled.

As to exception 9, we do not think that his Honor's charge ought to be construed as the appellant seeks to construe it in this exception. His Honor clearly and fairly and fully charged the law in regard to this matter and under the well-known rule which has so many times been applied by this Court, if the able, alert, and learned counsel for the defendant wished any further instruction or any fuller explanation, he ought to have requested his Honor to have given this, and, on his failure to do so, cannot now be heard to complain, but, as stated above, we think his Honor's charge was adequate and not amenable to the objections urged against it in the ninth exception.

The tenth exception is as follows: His Honor erred in charging the jury as follows:

"Under the State of South Carolina we have this man here charged with violating the law."

The Court can see no substantial merit in this exception. It was literally true that Judge Featherstone was at the head of the Court trying the defendant and that the defendant was there under charges brought by the State of South Carolina against him. We fail to see where the defendant was harmed by this statement and we are sure that, knowing the fair and impartial character of the presiding Judge, he meant nothing at all by this statement of a harmful nature and that no reasonable jury would or could have gathered from this remark that Judge Featherstone intended to express any opinion on the facts of the case or intended to injure the defendant in any way by this statement. In fact, in another place in the charge, Judge Featherstone made use of this language:

"The weight of all this testimony is a matter solely for your consideration."

It is the judgment of this Court that the appeal be dismissed and the judgment of the lower Court affirmed.

MESSRS. JUSTICES WATTS, COTHRAN, BLEASE and STABLER concur.

MR. CHIEF JUSTICE GARY did not participate.